Gregg A. Paradise
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel: 908.654.5000
Fax: 908.654.7866

*Attorneys for Plaintiff Therion Inc.*

**Document Filed Electronically**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THERION INC., | : | |
| | : | Civil Action No. 08-5256-TCP-ETB |
| Plaintiff, | : | |
| v. | : | District Judge Thomas C. Platt |
| | : | Magistrate Judge E. Thomas Boyle |
| MEDIA BY DESIGN, INC. d/b/a HEALTH WITH MAGNETS, DENNIS BACKER, and BLUEHOST INC., | : | |
| Defendants. | : | |
| | x | |

**THERION'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................ ii

I. BLUE HOST'S CLAIM THAT THERE WAS NO CONTRACT IS CONTRADICTED BY NUMEROUS STATEMENTS IN ITS COMPLAINT AND MOTION PAPERS ........................................ 1

II. BLUEHOST'S SUDDEN PRODUCTION OF TWO "NEW" TERMS OF SERVICE AGREEMENTS IS IMPROPER ........................................ 2

III. BLUEHOST HAS NOT DISPUTED ITS LIABLITY UNDER THE TERMS OF THE ORIGINAL TERMS OF SERVICE AGREEMENT ........................................ 5

IV. BLUEHOST'S VARIOUS OTHER ARGUMENTS DO NOT SUPPORT ITS CONTENTION THAT IT DID NOT BREACH THE TOS AGREEMENT ........................................ 5

V. THERION'S SUMMARY JUDGMENT MOTION IS NOT DEPENDENT UPON WHICH ENTITY CURRENTLY OWNS THE WEB SITE HOSTING ACCOUNT ........................................ 7

VI. THE TERMS OF SERVICE DO NOT PROHIBIT THE MAINTENANCE OF THE PRESENT SUIT ........................................ 8

VII. EVEN UNDER THE "NEW" TERMS OF SERVICE, BLUEHOST HAS BREACHED ITS OBLIGATIONS TO THERION ........................................ 8

VIII. SUMMARY JUDGMENT IS APPROPRIATE ON THERION'S CONVERSION CLAIM ........................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*,
No. 05-5155, 2010 U.S. Dist. LEXIS 6617 (E.D.N.Y. Jan. 27, 2010) .......... 4

*Bair v. Axiom Design, L.L.C.*,
20 P.3d 388 (Utah 2001) .......... 8

*Christiansen v. Farmers Ins. Exchange*,
116 P.3d 259 (Utah 2005) .......... 9

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006) .......... 4

*Gibbs v. CIGNA Corp.*,
440 F.3d 571 (2d Cir. 2006) .......... 2

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*,
452 N.Y.S.2d 599 (N.Y. Sup. Ct. 1982) .......... 10

*Yeterian v. Heather Mills N.V. Inc.*,
583 N.Y.S.2d 439 (N.Y. App. Div. 1992) .......... 10

**Statutes, Rules & Other Authorities**

Fed. R. Civ. P. 16 .......... 3

Fed. R. Civ. P. 37(c)(1) .......... 3

## I. BLUE HOST'S CLAIM THAT THERE WAS NO CONTRACT IS CONTRADICTED BY NUMEROUS STATEMENTS IN ITS COMPLAINT AND MOTION PAPERS

Despite numerous statements to the contrary, BlueHost now argues for the first time in its opposition brief that no contract existed between Therion and BlueHost and that BlueHost's claim for breach of contract was pled in the alternative. Neither of these new claims can be sustained. First, there is simply no language indicating that BlueHost intended to plead its counterclaim in the alternative. (*See* BlueHost Answer (Dkt.27) ¶¶ 72-75.) More troubling is that BlueHost has consistently stated throughout this case that Therion was bound by the Terms of Service Agreement ("TOS Agreement"), yet now, unbelievably, argues that "no contractual relationship arose between Therion and Bluehost (or at the very least there are issues of fact with respect to the existence of a contractual relationship)." (BlueHost Reply (Dkt.22) 5.) This newly manufactured position is belied by no less than six separate statements by BlueHost:

- Paragraph 68 of Blue Host's Answer and Counterclaim clearly states that "[t]he Hosting Contract between BlueHost and Therion provides that Therion is legally bound to the Hosting Contract 'as a precondition and requirement to use the services available via BlueHost.com.'" (BlueHost Answer ¶ 68.)
- BlueHost's counterclaim states that "Plaintiff has agreed that BlueHost is not liable under the contract" and that "Plaintiff has breached this contract with BlueHost." (*Id.* ¶¶ 72-73.)
- BlueHost's reply memorandum in support of its motion to dismiss states that the Terms of Service are "a contract between Plaintiff and BlueHost." (BlueHost Reply 6.)
- BlueHost's Memorandum of Law in Support of BlueHost's Motion for Partial Summary Judgment states that "Therion, as alleged purchaser of the Website, became subject of the Terms of Service." (BlueHost Mem. 7.)
- BlueHost's statement of *undisputed material* facts under Rule 56.1 states that "Therion, Inc., as alleged purchaser of the website, became subject to the Bluehost Terms of Service." (BlueHost Rule 56.1 Stm't ¶ 23.)
- The Supporting Declaration of Danny Ashworth, made under penalty of perjury, states that "Therion, Inc., as alleged purchaser of the website, became subject to the Bluehost Terms of Service." (Second Paradise Decl. Exh. G ¶ 24.)

Thus, BlueHost has repeatedly admitted the existence of a binding agreement with Therion, and further, affirmatively relied on this fact as the pillar of its counterclaim and motions.

The Second Circuit has held that "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation." *Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006). Thus, BlueHost's arguments that there was no contract between BlueHost and Therion and that the breach of contract counterclaim was pled in the alternative are directly contrary to its previous assertions, and are thus completely unsupported.

## II. BLUEHOST'S SUDDEN PRODUCTION OF TWO "NEW" TERMS OF SERVICE AGREEMENTS IS IMPROPER

BlueHost's last-minute production of two additional TOS Agreements ("'New' TOS Agreements"), attached to the Crusius declaration as Exhibits L and M and filed in opposition to Therion's motion for summary judgment is improper and unfairly prejudices Therion.

BlueHost originally attached the TOS Agreement ("Original TOS Agreement") as Exhibit A to its Answer and Counterclaim and cited to specific sections. (BlueHost Answer ¶¶ 68, 72.) BlueHost also relied on the Original TOS Agreement in its reply in support of its motion to dismiss, again citing specific sections. (BlueHost Reply (Dkt. 22) 6.) More recently, BlueHost used the Original TOS Agreement as the central basis for its partial summary judgment motion, stating that its "Terms of Service (or Bluehost's website rules) in effect at the inception of Backer's website (during March, 2008) up to and including the date of commencement of this action are set forth as Exhibit A to the moving declaration of Danny Ashworth." (BlueHost Mem. 4.) Mr. Ashworth's declaration states that "BlueHost's Terms of Service . . . in effect at the inception of Backer's website (during March, 2008) up to and including the date of commencement of this action are set forth as Exhibit A hereto." (Second Paradise Decl. Exh. G ¶ 8.) BlueHost's statement under Rule 56.1 also states that "Bluehost's Terms of Services, published on Bluehost's website on March 11, 2008 is annexed hereto as Exhibit A (the 'Terms of Service'). [¶ 8 Ashworth Decl.] The Terms of Service remained in effect, without change

throughout the period up to and including the date of commencement of this action. [¶8 Ashworth Decl.]" (BlueHost Rule 56.1 Stm't ¶¶ 4-5.)

After Therion, as well as BlueHost, have relied on the Original TOS Agreement throughout this entire case, BlueHost now contends that this was not the actual TOS Agreement that was in effect in November of 2008. In his sworn statement of November 23, 2009, Mr. Ashworth stated that he was the founder and Vice President of BlueHost, and that he "was fully aware of the facts stated" in his declaration. (Second Paradise Decl. Exh. G ¶ 1.) BlueHost now provides a second sworn statement of Mr. Ashworth in which he states that the Original Terms of Service was not in effect in November of 2008, directly contradicting his prior sworn statement despite declaring such facts "under penalty of perjury." (Crusius Decl. Exh. N; Second Paradise Decl. Exh. G at 10.)

BlueHost cannot claim that its failure to previously produce what it alleges is the correct agreement was due to simple mistake. The document at issue is critical to the claims of both Therion and BlueHost. As such, Therion's document requests focused specifically on this key document and requested BlueHost Terms of Service (1) "in effect on March 11, 2008"; (2) "in effect any time after August 24, 2008"; and (3) "in effect at any time that apply to either the MDB Defendants or Therion." (Second Paradise Decl. Exh. I Reqs. 5-7.) Despite these specific requests, the "New" TOS Agreements were never produced until BlueHost was faced with an overwhelming summary judgment motion.

Discovery closed on November 2, 2009[1], thus BlueHost is legally estopped from presenting new evidence without leave of the Court. Fed. R. Civ. P. 37(c)(1) states that:

---

[1] Despite the close of discovery, BlueHost states in its opposition papers that it "reserves the right to seek additional discovery once these motions are resolved." (BlueHost Opp'n 4 n.2.) BlueHost has had ample opportunity to take whatever discovery it wanted, yet chose not to do so. BlueHost has made no showing of good cause why discovery should be reopened as required by Fed. R. Civ. P. 16.

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The 1993 advisory committee notes describe this as an "automatic sanction [which] provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298-99 (2d Cir. 2006). BlueHost's presentation of these "New" TOS Agreements is clearly not harmless to Therion, as Therion relied on the Original TOS Agreement throughout the entire period of discovery, and in support of its Motion for Partial Summary Judgment. Furthermore, BlueHost has not provided any substantial justification for not disclosing the "New" TOS Agreements any earlier, nor has BlueHost argued that the "New" TOS Agreements were not within BlueHost's possession, custody, and control the entire time.

BlueHost asserts that it is not estopped from relying on the "New" TOS Agreements, citing to *American Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, No. 05-5155, 2010 U.S. Dist. LEXIS 6617 (E.D.N.Y. Jan. 27, 2010). In this case, the plaintiffs had discovered three versions of a contract during the discovery period. However, this case is inapposite, as BlueHost did not provide the "New" TOS Agreements during the discovery period.

Since that time, Therion has spent significant time and effort in completing discovery in this action, and in preparation of its Motion for Partial Summary Judgment and its oppositions to BlueHost's motions, which also relied on the Original TOS Agreement. Therion has relied on BlueHost's continued assertions that the Original TOS Agreement was in fact the Terms of Service Agreement in effect during November of 2008. BlueHost's failure to provide Therion with the "New" TOS Agreements in a timely manner has unfairly prejudiced Therion. Accordingly, Therion requests that the Court enforce Rule 37 and refuse to allow BlueHost to rely on the "New" TOS Agreements.

## III. BLUEHOST HAS NOT DISPUTED ITS LIABLITY UNDER THE TERMS OF THE ORIGINAL TERMS OF SERVICE AGREEMENT

BlueHost's opposition does not argue that BlueHost did not breach Sections 5.03 and 6.03 of the Original TOS Agreement. Rather, BlueHost relies entirely upon the "New" TOS Agreements because BlueHost is unable to provide factual evidence or legal argument to rebut Therion's arguments. Accordingly, Therion requests that the Court grant Therion's motion for partial summary judgment with respect to Therion's breach of contract claim.

## IV. BLUEHOST'S VARIOUS OTHER ARGUMENTS DO NOT SUPPORT ITS CONTENTION THAT IT DID NOT BREACH THE TOS AGREEMENT

BlueHost also relies on various other unsupported arguments and factual statements in support of its position that it did not breach the TOS Agreement. First, BlueHost argues that defendant Backer had two domains with BlueHost and that this somehow makes the situation "hazy." (BlueHost Opp'n 7.) The situation is clear: **both** domains were transferred by the Sales Agreement between Therion and Backer. No one, including Backer, in this action has ever disputed this fact.

Second, BlueHost argues that it is undisputed that BlueHost was never made aware of the Sales Agreement. (*Id.*) Whether or not BlueHost had direct knowledge of the Sales Agreement is irrelevant to BlueHost's breach of its contractual obligations to Therion. Furthermore, Therion offered documentation to BlueHost immediately upon being shut out of its hosting account, but BlueHost refused to consider it. (Spiegler Decl. ¶ 5.)[2] Instead, BlueHost informed Therion that it would have to obtain a Court order. (Paradise Decl. Exh. D at BH08). Thus, BlueHost was offered documentation but refused to consider it. BlueHost has not disputed this fact.

Third, BlueHost argues that Therion was operating under a "fictitious" name, which is entirely incorrect. (BlueHost Opp'n 7.) Therion filed for and was granted an assumed name

[2] The Spiegler declaration was originally prepared and attached to Therion's Memorandum of Law in Opposition to Defendant BlueHost's Motion for Partial Summary Judgment.

certificate for "HEALTH WITH MAGNETS" by the New York State Department of State Division of Corporations in conjunction with its purchase of the Health With Magnets business from Backer. (Spiegler Decl. Exh. B at T0007-08; Therion's Opp'n 8-9.) BlueHost was in possession of the relevant documentation when it made the aforementioned argument.

Fourth, BlueHost argues that "[a]s a matter of law, Therion and Backer failed to provide BlueHost with proper notice as to a change of ownership in the account and continued to maintain it in Backer's name" and that "Therion never changed the ownership information in the account to reflect that it was the record owner of the Bluehost account." (BlueHost Opp'n 7, 9.) BlueHost also argues that if the Court finds a contractual relationship between BlueHost and Therion, Therion breached the contract by failing to retain accurate contact information. (*Id.* at 11.) BlueHost, however, fails to identify **ANY** legal or factual basis for these statements. BlueHost's own electronic records verify that Therion updated the account information by changing Backer's name to Bruce Spiegler, as well as by changing the contact, credit card, and password information. (Paradise Decl. Exh. C at BH02-03.) Furthermore, as Therion was properly doing business under the name "Health With Magnets," there was no need for Therion to change this information. Further, none of the TOS Agreements identify what actions by Therion would constitute "proper notice"; rather, each of the agreements require only that the users of BlueHost's services maintain accurate contact information. In fact, while BlueHost has since initiated a new "Access and Control Policy" to outline how one may provide BlueHost with "proper notice," none of this language was in the Original or "New" TOS Agreements.

Fifth, BlueHost argues that Therion could have avoided being locked out of the account by creating a backup of the Web site "prior to this dispute occurring." (BlueHost Opp'n 7.) BlueHost's own Web site states that "[with] BlueHost you can depend on: . . . Secure and reliable

backups." (Spiegler Decl. Exh. A.) Furthermore, whether Therion is currently using the Web site is irrelevant to the issue of BlueHost's liability. If anything, this is merely a damages issue, and does not affect BlueHost's liability for breach of contract.

Sixth, BlueHost argues that "if Bluehost is charged with knowledge of the contested transfer, Backer had the actual and apparent authority to act on behalf of Therion when he communicated to BlueHost." (BlueHost Opp'n 12.) This argument is contradicted by undisputed facts. BlueHost's own documents show that when defendant Backer contacted BlueHost, he specifically stated that account information was changed by "Bruce Spiegler who is trying to steal this account." (Paradise Decl. Exh. E at BH32.) BlueHost does not dispute, and in fact, has admitted this fact to be true. (BlueHost Rule 56.1 Resp. ¶ 3.) Such a statement clearly contradicts a claim of apparent authority.

## V. THERION'S SUMMARY JUDGMENT MOTION IS NOT DEPENDENT UPON WHICH ENTITY CURRENTLY OWNS THE WEB SITE HOSTING ACCOUNT

BlueHost argues that it would be "impossible to determine Bluehost's liability to the Plaintiff without first determining whether the plaintiff or Defendant Backer own the website account." (BlueHost Opp'n 4.) This is incorrect. None of the parties dispute that defendant Backer sold the Health With Magnets business, along with the BlueHost hosting account and Web site, to Therion. (Paradise Decl. Exh. A at 55, Exh. B.) Defendant Backer merely argues that Therion breached the sales agreement between defendant Backer and Therion, and that as compensation for this breach, the Court should award ownership of the Web site to Backer. When defendant Backer contacted BlueHost, Therion was indisputably the current owner of the Web site hosting account, and it was at that time that BlueHost acted to the detriment of Therion by providing Backer with access to and control of the account.

## VI. THE TERMS OF SERVICE DO NOT PROHIBIT THE MAINTENANCE OF THE PRESENT SUIT

BlueHost argues that the "New" TOS Agreements, which include the same Section 6.01 of the Original TOS Agreement, prohibits the maintenance of the present suit against BlueHost. This is simply incorrect. Therion's claims are subject to the limitations in the TOS Agreement only for actions relating to BlueHost's failure to provide Web site hosting services under the contract. Each of the three TOS Agreements states that BlueHost shall not be liable under contract, negligence, tort, strict liability, or any other legal or equitable theory for "nonperformance or delay in performance." (Original TOS Agreement § 6.01; Second Paradise Decl. Exh. G at Exh. A. § 12.02; "New" TOS Agreements.) This language merely limits BlueHost's liability for loss of its customers' sales due to temporary loss of service. For example, if BlueHost's servers are ever inactive due to technical difficulties, this clause may protect BlueHost from liability resulting from lost sales. It does not, however, also extend to conversion or other breaches of BlueHost's duties to Therion. Thus, for the same reasons as Therion has argued with respect to the Original TOS Agreement, Therion disputes that any of the three TOS Agreements prohibits Therion from bringing the present action against BlueHost.

## VII. EVEN UNDER THE "NEW" TERMS OF SERVICE, BLUEHOST HAS BREACHED ITS OBLIGATIONS TO THERION

While Therion strongly objects to their introduction, should the Court allow BlueHost to present the "New" TOS Agreements, Therion maintains that BlueHost has breached these contracts as well. According to the Utah Supreme Court, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages." *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

As argued in Part I above, BlueHost has admitted in numerous instances that a valid

contract existed between BlueHost and Therion. The "New" TOS Agreements state that "[y]ou must retain accurate contact information to avoid having your account terminated." (Crusius Decl. Exhs. L, M.) Therion performed under the "New" TOS Agreements by updating the account information by changing Backer's name to Bruce Spiegler, as well as changing the contact, credit card, and password information. (Paradise Decl. Exh. C at BH02-03.)

Therion submits that BlueHost has breached its obligations to "keep all of your information confidential." (Crusius Decl. Exhs. L, M.) This obligation is similar to the obligation under § 6.03 of the Original TOS Agreement, under which BlueHost agreed that "BlueHost.com will not provide or sell to any third party your personal information and **will keep all subscriber information confidential**." In its Memorandum in Support of Summary Judgment, Therion argued that BlueHost breached this obligation by providing Backer with a new password, which allowed Backer access to Therion's confidential information. (Therion Mem. 6-7.) BlueHost's opposition memorandum does not dispute this argument.

In addition, by transferring ownership of the Web site hosting account to Backer, BlueHost also breached the "New" TOS Agreements by breaching the implied covenant of good faith and fair dealing. Under Utah law, this covenant:

> is based on judicially recognized duties not found within the four corners of the contract. These duties, unlike the duties expressly stated in the contract, are not subject to alteration by the parties. They exist whenever a contract is entered, and are imposed on the parties 'consistent with the agreed common purpose' of the contract.

*Christiansen v. Farmers Ins. Exchange*, 116 P.3d 259, 262 (Utah 2005) (internal citations omitted). The "New" TOS Agreements state that BlueHost is "committed to developing long lasting relationships that are built on trust. BlueHost.com will never intentionally violate that trust." ("New" TOS Agreements.) Therion trusted BlueHost to maintain Therion's account and Web site data, and not to turn it all over to unauthorized third parties such as Backer. But that is precisely what Bluehost did. (Paradise Decl. Exh. A at 114-15, Exh. D at BH08-09.)

Accordingly, for at least the foregoing reasons, even if the Court allows BlueHost to rely on the "New" TOS Agreements, BlueHost has still breached its obligations under these agreements as well, and summary judgment should be entered in Therion's favor.

## VIII. SUMMARY JUDGMENT IS APPROPRIATE ON THERION'S CONVERSION CLAIM

Contrary to BlueHost's claims, Therion's claim of conversion is not merely predicated on BlueHost's provision of a password to the Web site hosting account to defendant Backer, but rather, on the content and product data present within Therion's hosting account. The account contained "extensive electronic data files that include all of Therion's product data including technical specifications, sale and pricing information, product photographs, and Web site graphics design and layout information." (Compl. (Dkt.1) ¶ 15.) There is no dispute that defendant Backer transferred the account to Therion and that Therion owned the content described above. (Paradise Decl. Exh. A at 55, Exh. B.) Thus, even if the Court were to find that BlueHost was not liable for breach of contract, the Court should still find that BlueHost converted Therion's property.

BlueHost also argues that "a conversion claim predicated on a breach of contract is duplicative and must be dismissed," citing to *Yeterian v. Heather Mills N.V. Inc.*, 583 N.Y.S.2d 439 (N.Y. App. Div. 1992) and *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 452 N.Y.S.2d 599 (N.Y. Sup. Ct. 1982). These cases are distinguished on their facts. In both *Yeterian* and *Peters*, unlike here, the breaching party never had ownership, possession, or control of the property in dispute. *Yeterian*, 583 N.Y.S.2d at 439; *Peters*, 452 N.Y.S.2d at 599. There is no dispute that BlueHost had possession and control of the hosting account and data in this case. Accordingly, these cases do not support BlueHost's argument.

Respectfully submitted,

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK, LLP
*Attorneys for Plaintiff Therion Inc.*

Dated: February 24, 2010

By: s/ Gregg A. Paradise
Gregg A. Paradise
Tel: 908.654.5000
E-mail: gparadise@ldlkm.com
litigation@ldlkm.com small