UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                :                **ECF CASE**

THERION INC.,               :

                                :           **08 CV 5256 (TCP) (ETB)**

            **Plaintiff,**      :

                                :

            **-against-**        :

                                :

**MEDIA BY DESIGN, INC., DENNIS**    :
**BACKER, and BLUEHOST, INC.,**    :

                                :

          **Defendants.**     :

                                :
--------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF BLUEHOST, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**Dated:**  **New York, New York**
          **November 23, 2009**

                          **Carl E. Person**
                          *Attorney for Defendant, Bluehost, Inc.*
                          **325 W. 45th Street - Suite 201**
                          **New York, New York 10036-3803**
                          **(212) 307-4444**

# TABLE OF CONTENTS

**Page(s)**

Preliminary Statement ................................................................1

Therion's Admission that Media/Backer Failed
to Disclose to Bluehost the Change of Website Ownership ......................2

The Facts................................................................................3

Specific Facts Supporting Summary Judgment .........................................9

THE LAW ................................................................................15

I.      THE STANDARD FOR GRANTING SUMMARY
        JUDGMENT ........................................................................15

II.     BLUEHOST'S TERMS OF SERVICE AND THEIR
        ENFORCEMENT BY BLUEHOST ARE AUTHORIZED
        BY FEDERAL LAW ................................................................16

III.    PARTIAL SUMMARY JUDGMENT FOR BLUEHOST
        SHOULD BE GRANTED BECAUSE THE TERMS OF
        SERVICE STATE THAT THE WEBSITE HOST
        (BLUEHOST) IS TO HAVE NO LIABILITY TO THE
        WEBSITE OWNER AND SUCH PROVISION IS NOT
        UNCONSCIONABLE ................................................................18

IV.     PARTIAL SUMMARY JUDGMENT FOR BLUEHOST IS
        APPROPRIATE BECAUSE BLUEHOST HAS NOT
        ACTED IMPROPERLY AS TO THERION IN ANY WAY........19

V.      THERION HAS NO CLAIM AGAINST BLUEHOST FOR
        BREACH OF BLUEHOST'S TERMS OF SERVICE.................20

VI.     THERION HAS NO CLAIM AGAINST
        BLUEHOST FOR MISAPPROPRIATION ...................................20

**TABLE OF CONTENTS (Cont'd)**

**Page(s)**

VII.   **THERION HAS NO CLAIM AGAINST
      BLUEHOST FOR CONVERSION** ..................................22

VIII.  **THERION HAS NO CLAIM AGAINST
      BLUEHOST FOR UNFAIR COMPETITION** .............................22

IX.    **THERION HAS NO CLAIM AGAINST
      BLUEHOST FOR COPYRIGHT INFRINGEMENT**..................23

**CONCLUSION** ...........................................................17

**TABLE OF CASES AND AUTHORITIES**

**Page(s)**

**Cases:**

*Capitol Records, Inc. v. Naxos of America, Inc.*,
4 N.Y.3d 540, 563, 830 N.E.2d 250 (2005) .................................23

*Diaz v. Memorial Sloan-Kettering Cancer Center*, Slip Copy,
2009 WL 3877519 (S.D.N.Y.,2009) ...........................................12

*Graham v. James*, 144 F.3d 229, 237-38 (2d Cir.1998) .............................24

*In re American Airlines, Inc., Privacy Litigation*,
370 F.Supp.2d 552, 558 (N.D.Tex. 2005) ......................................14

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir.1997) ..............24

*Net Global Marketing, Inc. v. Dialtone, Inc.*,
217 Fed. Appx. 598 (9th Cir. 2007) ...........................................16

## TABLE OF CASES AND AUTHORITIES (Cont'd)

**Page(s)**

**Cases:**

*Rano v. Sipa Press, Inc.,* 987 F.2d 580, 586 (9th Cir.1993)..........................24

*Schanfield v. Sojitz Corp. of America*, ___ F.2d ___,
2009 WL 3241573 (S.D.N.Y. 2009) ............................................................21

 *Sherman & Co. v. Salton Maxim Housewares, Inc*.,
94 F.Supp.2d 817, 821 (E.D.Mich.2000)  ....................................................14

**Statutes:**

Electronic Communications Privacy Act ...........................................................5
18 U.S.C.A. § 2510........................................................................................13
18 U.S.C.A. § 2701.............................................................................5, 13, 14

**Other Authorities:**

GRAY HAT HACKING: THE ETHICAL HACKER'S
HANDBOOK, by Shon Harris, Allen Harper, Chris Eagle and
Jonathan Ness, 2nd Edition, 2008, published by McGraw-Hill....................13

3 Nimmer on Copyrights § 10.15 [A] (6th ed. 1978) ...................................24

BH_MotSJ_Memo_in_Supp_FINAL.doc c1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
| | : | **ECF CASE** |

THERION INC.,                                 :

|   | : | **08 CV 5256 (TCP) (ETB)** |

Plaintiff,     :

:

-against-        :

:

MEDIA BY DESIGN, INC., DENNIS    :
BACKER,  and BLUEHOST, INC.,      :

:

Defendants.     :
-------------------------------------------------------x

## BLUEHOST, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

### Preliminary Statement

This memorandum of law is submitted on behalf of Defendant Bluehost, Inc. ("Bluehost") in support of its motion to dismiss all of the claims of Therion, Inc. ("Therion") against Bluehost.

This action was commenced by Therion, Inc., purchaser of website healthwithmagnets.com (the "Website"), against Dennis Backer ("Backer") and Media by Design, Inc. ("Media"), as sellers of the Website and against Bluehost, Inc. ("Bluehost), as host of the Website.  The substance of Therion's complaint against Bluehost is that Bluehost failed to recognize Therion as the new owner of

1

the Website and continued to give control of the Website to Backer and Media, the owners of record of the website hosting account with Bluehost.

Therion's complaint against Bluehost consists of 5 alleged claims: (1) Breach of Contract (Second Claim for Relief); (2) Misappropriation (Third Claim for Relief); (3) Conversion (Fourth Claim for Relief); and (5) Copyright Infringement (Fifth Claim for Relief).

Bluehost has filed a counterclaim against Therion for breach of agreement (*i.e.*, breach of Bluehost's Terms of Service).  The counterclaim is not addressed in this motion.

The action against Bluehost was improvidently commenced and should be dismissed for two reasons. First, Bluehost violated no rights of Therion. Secondly, Bluehost's published Terms of Service are binding on the owners of each website hosted byBluehost and such terms state that Bluehost shall have no liability to the owner under the circumstances of this case.

**Therion's Admission that Media/Backer Failed**
**To Disclose to Bluehost the Change of Website Ownership**

It is important to note that Therion alleges at ¶ 58 of its complaint that

> By virtue of the Sale Agreement, Backer and Media By Design had a duty to disclose to Bluehost their sale to Therion of the Media By Design business, including the Bluehost Web site hosting account.  Upon information and belief, Backer and Media By Design knowingly, or with reckless disregard for the

2

truth, failed to fully disclosure this information to Bluehost, despite their obligation to do so.

## The Facts

Since its inception in December 2003, Bluehost has been providing hosting services to an ever-increasing number of websites (now more than one million).

Hosting of websites is wholly different from the issuance and maintenance of a domain name.  A large percentage of Bluehost customers purchase their domain names from other companies (called "domain registrars") and then set up their websites using Bluehost's facilities.  The customer (i.e., website owner) makes arrangements with the domain registrar to have the domain name point (using what is known as "DNS") to Bluehost's servers so that when the customer's domain name is inputted into a web browser the internet protocols will point to Bluehost's servers and allow access to the website for that domain name.

Bluehost does not make these arrangements for the owner of a domain name. The owner of a domain name must make arrangements to have his domain name, when accessed, be directed to Bluehost's servers.

This was done by co-defendant Dennis Backer ("Backer"), the owner of the healthwithmagnets.com domain name, back in March 2008, when the website at issue in this case was first hosted by Bluehost.

3

As a host to over 1 million different websites, Bluehost does not engage in a dialog with each of its customers about how they are to use Bluehost's website hosting services.

As is customary in the website hosting industry, Bluehost has rules to be followed by website owners and the people who assist them in building, maintaining and marketing their websites.

Bluehost's Terms of Service (or Bluehost's website rules) in effect at the inception of Backer's website (during March, 2008) up to and including the date of commencement of this action are set forth as Exhibit A to the moving declaration of Danny Ashworth.

The Terms of Service is Bluehost's contract with each of the persons who use Bluehost to host their websites.

There is no negotiation of terms of contract with Bluehost's customers. Bluehost has an automated system by which customers sign up, agree to the present rules, and any amendments thereto, make their payment by credit card and future payments by automatic payment from their credit card or bank account.

Perhaps the most important part of the service Bluehost provides to website owners (in addition to the software for permitting owners to set up and maintain their websites on Bluehost's servers) is the elaborate security precautions Bluehost

has put in place to try to ensure that an unauthorized person cannot destroy any of the million plus websites hosted on Bluehost's servers.

The automated security procedure requires the owner (who has already been given a unique system generated username or "Identification Code" and has created for himself/herself a password) to provide his/her identification code and password before he/she will be allowed access to the website files for that owner maintained by Bluehost.

When somebody wants to access the files of a website, putting them in the position of being able to change, delete, move or destroy some or all of the website files, they have to provide their identification code and password in response to an automated inquiry by the Bluehost system.

Bluehost's software then verifies that the provided identification code and password are correct and then access the website is granted.

When Dennis Backer and/or Media-by-Design Inc. sold their healthwithmagnets.com website (the "Website") to Therion, Inc., some of the contact information was changed but the name of the company with record ownership of the hosted website was never changed from the original record ownership name of Health with Magnets.

Simply changing the contact information to name a new person and giving such person access to the site and files does not make such person the owner of the

account (or website).  There are many times that web designers and programmers must have full access to the sites but this does not constitute ownership.

Although part of the contact information about the Website was changed and the password was changed, at no time was Bluehost made aware of the change of ownership of the account from Backer to Therion.

The effort by Therion to access the Website was viewed by the Bluehost software and system as an unauthorized attack on the Website and Therion was denied access to the Website files.   It was during this time (on November 20, 2008) that Backer contacted Bluehost stating that his website was being stolen. Due to the lack of any signed change of ownership documents (stating that the ownership of the website had changed to Therion, Inc.) Therion's efforts to exercise ownership rights to the website were rejected by Bluehost.

Backer, the website owner of record, was making claims directly contrary to Therion's claims.

Bluehost followed proper procedures and viewed Therion's access to the website as unauthorized.

This is precisely what Bluehost's agreement (or Terms of Service) requires Bluehost to do.  See text under paragraph entitled "Spamming" of Exhibit A to the Ashworth declaration.  Also, such action by Bluehost was required under 18 USC

§ 2701 of the Electronic Communications Privacy Act ("ECPA"), not just Bluehost's Terms of Service.

Bluehost did precisely what it was supposed to do.

Backer, the registered owner of the website, and Therion, the purchaser of Backer's Website, failed to provide the required changes in authorization for access to the Website and Therion's attempts to access the Website were denied as a result, in accordance with Bluehost's Terms of Service.

Therion, as alleged purchaser of the Website, became subject to the Terms of Service and failed (with Backer) to follow the Terms of Service to create record ownership of the Website for Therion and presumably to deny access to the Website to Backer at some point along the way.

Therion tried to deny Backer access to the Website, when Backer called Bluehost claiming Therion was stealing/hacking Backer's Website.

As a result, there is no liability of Bluehost to anyone because Bluehost has done no wrong.  It has protected the Website from threatened injury by someone (Therion) not authorized to access the Website.

In addition, the Terms of Service state that Bluehost shall not be liable under the circumstances of this case (paragraph starting with "Limitation of Bluehost.com's Liability", Exhibit A to the Ashworth declaration, 4 paragraphs from bottom), which both Backer at inception, and Therion through purchase, were

7

subject.  The terms in effect at all relevant times prior to the commencement of this

action state:

> 1.  **Limitations on BlueHost.Com's Liability.** BLUEHOST.COM
> SHALL NOT BE LIABLE FOR NONPERFORMANCE OR DELAY IN
> PERFORMANCE CAUSED BY ANY REASON, WHETHER WITHIN
> OR OUTSIDE OF ITS CONTROL. IN NO EVENT SHALL
> BLUEHOST.COM BE LIABLE UNDER CONTRACT, NEGLIGENCE,
> TORT, STRICT LIABILITY OR ANY OTHER LEGAL OR EQUITABLE
> THEORY FOR ANY DIRECT, INDIRECT, INCIDENTAL,
> EXEMPLARY OR CONSEQUENTIAL DAMAGES (INCLUDING,
> WITHOUT LIMITATION, LOSS OF USE, LOST PROFITS, LOSS OF
> DATA OR INFORMATION OF ANY KIND OR LOSS OF BUSINESS
> GOODWILL OR OPPORTUNITY) WHETHER OR NOT
> BLUEHOST.COM HAS BEEN ADVISED OF THE POSSIBILITY OF
> SUCH LOSS OR DAMAGES. BLUEHOST.COM SHALL NOT BE
> LIABLE FOR THE COST OF PROCUREMENT OF SUBSTITUTE
> GOODS, SERVICES OR TECHNOLOGY. BLUEHOST.COM'S ENTIRE
> LIABILITY AND SUBSCRIBER'S EXCLUSIVE REMEDY WITH
> RESPECT TO ANY USE OF THE SERVICES IS THE CANCELLATION
> OF SUBSCRIBER'S ACCOUNT AS SET FORTH HEREIN. IN NO
> EVENT SHALL BLUEHOST.COM'S LIABILITY TO YOU, THE
> SUBSCRIBER, EXCEED THE GREATER OF ONE DOLLAR ($1.00) OR
> ANY AMOUNTS ACTUALLY PAID IN CASH BY YOU, THE
> SUBSCRIBER, TO BLUEHOST.COM FOR THE PRIOR ONE MONTH
> PERIOD. NO ACTION, REGARDLESS OF FORM, ARISING OUT OF
> THESE TERMS OR OUT OF THE SERVICES MAY BE BROUGHT BY
> YOU, THE SUBSCRIBER, MORE THAN ONE YEAR AFTER THE
> EVENT WHICH GAVE RISE TO THE CAUSE OF ACTION . SOME
> JURISDICTIONS DO NOT ALLOW A LIMITATION ON LIABILITY
> FOR NEGLIGENCE THAT CAUSES DEATH OR PERSONAL INJURY
> AND, IN SUCH JURISDICTIONS, BLUEHOST.COM'S LIABILITY
> SHALL BE LIMITED TO THE GREATEST EXTENT PERMITTED BY
> LAW.

> * * *

> IF YOU, FOR YOURSELF OR ON BEHALF OF ONE OR MORE
> PERSONS YOU ARE REPRESENTING WITH RESPECT TO
> BLUEHOST.COM SERVICES, DO NOT AGREE TO ANY OF THE
> FOREGOING TERMS, YOU MUST, FOR YOURSELF AND ON

8

BEHALF ANY SUCH PERSON(S), DISCONTINUE THE
REGISTRATION PROCESS, DISCONTINUE YOUR USE OF THE
SERVICES, AND, IF YOU ARE ALREADY A MEMBER, CANCEL
YOUR BLUEHOST.COM ACCOUNT. BEGINNING NOW, ANY
CONTINUATION BY YOU IN USING THE SERVICES CONSTITUTES
FOR YOU AND THOSE REPRESENTED BY YOU AN EXPRESS
AFFIRMATION AND COMMITMENT TO BE (OR TO CONTINUE TO
BE, AS APPLICABLE) LEGALLY BOUND BY AND TO COMPLY
WITH ALL OF THESE TERMS.

(END of Terms of Service)

**Specific Facts Supporting Summary Judgment**

Backer became a customer of Bluehost, for Bluehost's website hosting
services, on March 11, 2008.

Backer completed the new-customer signup form on Bluehost's website and
made payment of the hosting fee by credit card, in the amount of $166.80 for a 2-
year hosting period.

As part of the signup process, Backer agreed that his contractual relationship
with Bluehost was defined by Bluehost's Terms of Services.

In ¶ 58 of its Complaint, Therion alleges that Backer had a duty to disclose
to Bluehost the sale of Backer's Media-by-Design business and website to Therion,
Inc., but failed to do so. This is an admission by Therion that makes it clear that
Therion has no viable claim against Bluehost.

Backer not only failed to notify Bluehost of the sale of the hosting account,
but on November 20, 2008 Backer called into Bluehost and claimed that the

account was being stolen by a Bruce Spiegler (owner of Therion) and sent in to Bluehost an affidavit swearing that the account was his (Backer's).  See Exhibit C to the Ashworth moving declaration, which is exhibit BH38, BH39 and BH40 in Bluehost's initial disclosures.

Media by Design was never a customer of Bluehost and was never listed on the account.  Backer had signed up for the account in question with Bluehost and used the name "Health With Magnets" as the company name in the contact information.  Bluehost never heard of the company Media By Design or Therion, Inc. until the Summons and Complaint in this action was served on Bluehost, on January 16, 2009.

Bluehost never saw a copy of the Sale Agreement between Backer and Therion, Inc. (Exhibit A to the Complaint) until service of the Summons and Complaint on Bluehost.

The Sale Agreement itself states that domains and hosting accounts are being transferred to the purchaser, but does not list any specific website or domain names.  See Article I, section (c) of the Sale Agreement.  Backer's hosting account with Bluehost includes domain names and websites obviously not part of the Sale Agreement (including healthdiscountmall.com).  If Bluehost had given Therion or Spiegler access to Backer's hosting account, Bluehost could have been liable to

Backer for giving unauthorized access to Backer's healthdiscountmall.com website. This issue did not arise because Bluehost never saw the Sale Agreement until after commencement of this action.

It should be noted that Article IV of the Sale Agreement required the seller and buyer to execute any other documents necessary to finalize the agreement within 30 days, which would have included a change of ownership document for the Bluehost hosting account, but this never occurred, or at least Bluehost never received any such document.

Bluehost was never notified of the sale by either party prior to the commencement of this action.

Although some contact information on the hosted account was changed over a 3-month period, Therion, Inc. was never listed as part of any contact information and the company information for the account ownership has never been changed from its original status of "Health With Magnets".  This shows that Backer never performed the duty to disclose the sale to Bluehost which Therion alleged that Backer had, and failed to perform.  See paragraph 58 of the Complaint.

From Bluehost's standpoint, Backer never lost or appropriately transfer ownership of the hosting account.  Bluehost's policy is clear that the owner of the

credit card that paid for the hosting account is the owner of the account unless a change of ownership document is received (or Bluehost receives a court order to such effect).

Therion was never listed as owner or otherwise as part of the contact information.  The owner's name was always listed as Health With Magnets.

Bluehost is not the person who changes the password for an account. Backer is the person who needed to change the password, and he failed to do so.

Thus, there is a dispute between Backer (who claims to be an employee of Therion at the time) and Therion/Bruce Spiegler, but not with Bluehost.  Bluehost was simply the service provider and had nothing to do with who was authorized to access the hosted account.

Bruce Spiegler admits to having access to the hosting account from about August 30, 2008 through November 20, 2008.  He also admits to having access to the domain name healthwithmagnets.com from November 27, 2008 which is when Bluehost ceased being the host for healthwithmagnets.com.  Spiegler moved the domain name and website to Worldnic.com on November 27, 2008 and then moved it again the next day (on November 28, 2008) to apolloservers.com.  See Exhibit D to the Ashworth moving declaration.

If Bruce Spiegler had access to all of the files on the Bluehost hosting account from August 30, 2008 through November 20, 2008, why did he not use Bluehost's simple 1 click backup utility which existed and worked for the duration of that time to make a backup of the files which were/are of such alleged great importance to him.  Spiegler was negligent to fail to back up documents[/files] that he is now claiming have a value of many hundreds of thousands of dollars.

Why has Spiegler still not got his website up and running since he has access to the domain healthwithmagnets.com and has also had the documents/files which Bluehost provided for him as part of the discovery on July 19, 2009.

Backer provided Bluehost with an affidavit (Exhibit D to the moving Ashworth declaration) stating that he was in fact the owner of the website.  Also, he sent a copy of his driver's license which matched the original contact/billing information on the account and, most importantly, sent in a copy of the American Express card with his name on it that was used to purchase the hosting account and additional "add on" services from Bluehost.

Therion is claiming to be bound by the Terms of Service (i.e., the contract between Bluehost and Backer for the hosted account) upon execution of the Sale Agreement between Backer and Therion/Spiegler.  If so, Therion should comply with the requirement, in the Terms of Service, that any suit against Bluehost be

13

brought in Utah, and that Bluehost have no liability under the following provision quoted above:

> BLUEHOST.COM SHALL NOT BE LIABLE FOR NONPERFORMANCE OR DELAY IN PERFORMANCE CAUSED BY ANY REASON, WHETHER WITHIN OR OUTSIDE OF ITS CONTROL. IN NO EVENT SHALL BLUEHOST.COM BE LIABLE UNDER CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY OR ANY OTHER LEGAL OR EQUITABLE THEORY FOR ANY DIRECT, INDIRECT, INCIDENTAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOSS OF USE, LOST PROFITS, LOSS OF DATA OR INFORMATION OF ANY KIND OR LOSS OF BUSINESS GOODWILL OR OPPORTUNITY) WHETHER OR NOT BLUEHOST.COM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES.

Contact information change taking place over the Internet electronically as to a Bluehost hosted account takes place without help from Bluehost customer service and winds up changing the contact information, but this does not change the ownership of the hosted account.

A change of ownership document signed by both parties is required for an actual change of hosting account ownership to take place.  It is very common for design companies and programmers to have access to hosting accounts and to be listed in the contact information area. This gives them access to work on the website, but does not give them ownership of the website.

Bluehost gave access to the rightful owner of the account (Backer) according to Bluehost's policies and Terms of Service, which both Backer and Therion/Spiegler admit they are subject to.

14

There was no malice by Bluehost, which simply followed Bluehost's procedures for protecting the Website owner as indicated on our records.

Therion never owned the hosted account on Bluehost's records for the account.  Ownership was never properly transferred for the hosted account.

Therion's complaint against Bluehost should be dismissed as wholly unwarranted and abusive.

## THE LAW

## I.   THE STANDARD FOR GRANTING SUMMARY JUDGMENT

As stated in *Diaz v. Memorial Sloan-Kettering Cancer Center*, Slip Copy, 2009 WL 3877519 (S.D.N.Y.,2009):

> I..   Summary Judgment Standard
>
> Summary judgment is appropriate where the parties' submissions demonstrate "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c);*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   In evaluating a summary judgment motion, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party.  *Id.* At 255.  The party seeking summary judgment bears the initial burden of showing that no genuine issue of fact exists. *Celotex,* 477 U.S. at 323. Once such a showing is made, the opposing party must present "specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2). However, the nonmoving party "may not rely on conclusory

15

allegations or unsubstantiated speculation." *Scotto v. Almenas*,
143 F.3d 105, 114 (2d Cir. 1998).

## II. BLUEHOST'S TERMS OF SERVICE AND THEIR ENFORCEMENT BY BLUEHOST ARE AUTHORIZED BY FEDERAL LAW

In Part I of *Gray Hat Hacking: The Ethical Hacker's Handbook*, authored by

Shon Harris, Allen Harper, Chris Eagle and Jonathan Ness, 2nd Edition, published

by McGraw-Hill copyright 2008, in a part entitled "18 USC Sections 2510, et Seq.

and 2701, the Electronic Communications Privacy Act ("ECPA"), there is a

reference to the type of problem existing in the instant case, as follows:

> Many of the cases under the ECPA have arisen in the context of
> parties accessing websites and communications in violation of
> posted terms and conditions or otherwise without authorization.
> It is very important for information security professionals and
> businesses to be clear about the scope of authorized access that is
> intended to be provided to various parties to avoid these issues.

18 USC § 2701 provides:

> ### § 2701. Unlawful access to stored communications
>
> **(a) Offense.**--Except as provided in subsection (c) of this section
> whoever--
>
> **(1)** intentionally accesses without authorization a facility through
> which an electronic communication service is provided; or
>
> **(2)** intentionally exceeds an authorization to access that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire
> or electronic communication while it is in electronic storage in such

16

system shall be punished as provided in subsection (b) of this section.

**(b) Punishment.**— * * *  [Omitted]

**(c) Exceptions.**--Subsection (a) of this section does not apply with respect to conduct authorized--

**(1)** by the person or entity providing a wire or electronic communications service;

**(2)** by a user of that service with respect to a communication of or intended for that user; or

**(3)** in section 2703, 2704 or 2518 of this title.

The purpose of § 2701 is to prevent unauthorized access to a facility through which an electronic communication service is provided."  *In re American Airlines, Inc., Privacy Litigation*, 370 F.Supp.2d 552, 558 (N.D.Tex. 2005).

*Sherman & Co. v. Salton Maxim Housewares, Inc.,* 94 F.Supp.2d 817, 821 (E.D.Mich.2000) stated:

> "Because section 2701 of the ECPA prohibits only unauthorized access and not the misappropriation or disclosure of information, there is no violation of section 2701 for a person with authorized access to the database no matter how malicious or larcenous his intended use of that access. Section 2701 outlaws illegal entry, not larceny."

Bluehost's Terms of Service are enforced by 18 U.S.C.A. § 2701, making it a federal crime for anyone to gain unauthorized access to the website files, and the

statute provides legal justification for Bluehost's enforcement of its Terms of

Service.

### III.   PARTIAL SUMMARY JUDGMENT FOR BLUEHOST SHOULD BE GRANTED BECAUSE THE TERMS OF SERVICE STATE THAT THE WEBSITE HOST (BLUEHOST) IS TO HAVE NO LIABILITY TO THE WEBSITE OWNER AND SUCH PROVISION IS NOT UNCONSCIONABLE

Bluehost's Terms of Service, published for all Bluehost customers and

prospective customers to read, states unequivocally that Bluehost is to have no

liability to the website owner

> … UNDER CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY OR ANY OTHER LEGAL OR EQUITABLE THEORY FOR ANY DIRECT, INDIRECT, INCIDENTAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOSS OF USE, LOST PROFITS, LOSS OF DATA OR INFORMATION OF ANY KIND OR LOSS OF BUSINESS GOODWILL OR OPPORTUNITY) WHETHER OR NOT BLUEHOST.COM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES.

Contractual terms such as this are necessary because the amount of money

paid per  year by a website owner (who could have tens or hundreds of websites

for the one annual payment) is tiny in comparison to the potential damages that

could be claimed.  If website hosts were liable for consequential damages to their

hosted customers, the hosts would be put out of business by endless lawsuits

seeking recovery for actual or imagined errors.

In the instant case, Backer paid $166.80 for two year's hosting service and Therion is claiming many hundreds of thousands of dollars in damages, plus litigation costs, which costs for customers paying less than $100 per year cannot be absorbed by any website host. Bluehost's Terms of Service are intended to enable Bluehost to remain in business and provide hosting service to its customers, which it cannot do if each of the million plus websites, or one million website owners, could recover damages from Bluehost for actual or imagined errors on Bluehost's part.

Bluehost's activities consisted of following and enforcing its Terms of Service, and should have no liability for such actions.  The limitation of liability set forth in the Terms of Service are not unconscionable.  See *Net Global Marketing, Inc. v. Dialtone, Inc.*, 217 Fed. Appx. 598 (9th Cir. 2007).

## IV.   PARTIAL SUMMARY JUDGMENT FOR BLUEHOST IS APPROPRIATE BECAUSE BLUEHOST HAS NOT ACTED IMPROPERLY AS TO THERION IN ANY WAY

Bluehost did nothing wrong and needs no limitation of liability to obtain the requested relief of partial summary judgment.  Bluehost's Terms of Service require that Bluehost protect the Website owner of record, which Bluehost did, by not giving Therion status as record owner when Therion demanded access to the Website.  The Terms of Service have a way in which record ownership is to be transferred for Bluehost administration purposes, and Therion and Backer failed to

provide the necessary documentation.  For such reason, Bluehost treated Backer as the owner and excluded Therion from ownership rights.

Accordingly, Bluehost's motion for partial summary judgment should be granted on this alternative ground that Bluehost did not act improperly in any way as to Therion.

## V.   THERION HAS NO CLAIM AGAINST BLUEHOST FOR BREACH OF BLUEHOST'S TERMS OF SERVICE

In its claim against Bluehost for breach of contract, Therion alleges that the contract being breached is Media's agreement with Bluehost, to which Therion alleges it is successor (Compl., ¶ 32.  The agreement between Bluehost and Media's seller, Dennis Backer ("Backer") includes Bluehost's Terms of Service.

The agreement between Therion and Media, Exhibit A to the Complaint, required Media to "(e) provide and assist BUYER with all user names and passwords so as to transfer ownership of all accounts". Under Bluehost's Terms of Service, the owner as listed with Bluehost has to provide provide to Bluehost notice of the change of ownership.  This did not occur, and Bluehost properly continued to recognize Backer and Media as the owner of the Website. This is the protection of the owner within the Terms of Service.  There was no breach of  the Terms of Service by Bluehost.

Accordingly, there was no breach of agreement by Bluehost, and the claim against Bluehost should be dismissed.

## VI. THERION HAS NO CLAIM AGAINST BLUEHOST FOR MISAPPROPRIATION

Therion, in its Third Claim for Relief, alleges that Bluehost misappropriated the website hosting account that Media/Backer sold to Therion. This is a ridiculous claim. The files remained intact on the host servers at all times, and pursuant to Bluehost's Terms of Service, to which the new owner was subject, Bluehost required the owner of record (Backer/Media) to submit appropriate papers to notify Bluehost of the change of ownership, and this was not done. Accordingly, Backer/Media remained the owner of record of the account, in accordance with Bluehost's Terms of Service.

There was no misappropriation by Bluehost. Bluehost did not have anything more or less than it had before the problem commenced. Bluehost as website host had the same files being hosted for whoever was the owner of record with Bluehost.

The elements of misappropriation are lacking. There was no trade secret involved; there was no use of a trade secret in breach of an agreement, confidence or duty, or as the result of discovery by improper means. *Schanfield v. Sojitz Corp.*

21

*of America*, ___ F.2d ___, 2009 WL 3241573 (S.D.N.Y. 2009). Also, there was no criminal misappropriation or conversion. See Point VII below.

All we have is an owner (Backer/Media) failing to give the required notice to Bluehost of change of ownership.  The notice is required under Bluehost's Terms of Service to prevent unauthorized persons from accessing and destroying website files.

Therion's misappropriation claim against Bluehost should be dismissed.

## VII.  THERION HAS NO CLAIM AGAINST BLUEHOST FOR CONVERSION

Therion, in its Fifth Claim, alleges that Bluehost unlawfull converted the website account.  This allegation is senseless.  Bluehost is one of the two contracting parties, and the account remained with Bluehost as one of the two contracting parties.  There remained the other party to the account (Backer/Media) because of the failure to provide Bluehost with the required notice of change of ownership.  The account remained intact, and there was no conversion by Bluehost.

Therion's conversion claim against Bluehost should be dismissed.

## VIII.  THERION HAS NO CLAIM AGAINST BLUEHOST FOR UNFAIR COMPETITION

Therion, in its Fourth Claim, alleges that by reason of its activities, Bluehost engaged in unfair competition with Therion.  This is a ridiculous claim.  Bluehost

never engaged in any actions to divert website visitors to any goods or services offered by Bluehost, or to any competing goods or services offered by Bluehost. Bluehost is in the business of hosting websites, and not in the business of selling any of the products or services being offered in the Website at issue (healthwithmagnets.com). Healthwithmagnets.com does not offer website hosting services. Accordingly, there is no competition between the Website at issue and Bluehost, so there can be no unfair competition. *Capitol Records, Inc. v. Naxos of America, Inc*., 4 N.Y.3d 540, 563, 830 N.E.2d 250 (2005) ("requires competition in the marketplace or similar actions designed for commercial benefit").

Therion's unfair competition claim against Bluehost should be dismissed.

## IX.   THERION HAS NO CLAIM AGAINST BLUEHOST FOR COPYRIGHT INFRINGEMENT

Therion, in its Sixth Claim, alleges that Bluehost infringed various copyrights owned by Therion (i.e., the copyrights Therion purchased from Backer/Media). This also is a ridiculous claim. Bluehost did nothing more than host the website account, before and after Therion's purchase of the account from Backer/Media. This is a contractual dispute relating to the hosting of various files, and is not actionable as copyright infringement.

Hosting of website files could be considered a license to publish the files, but upon analysis this does not seem to be the case. Bluehost is not publishing the

23

Website files such as Random House publishes a book.  Bluehost is more like a
printer that facilitates publication by someone else (herein, Back/Media and/or
Therion), but not Bluehost.  Accordingly, there is no copyright infringement by
Bluehost.

Assuming arguendo that Bluehost is some type of licensed publisher of the
files, there is a contractual dispute, not copyright infringement.

*Graham v. James*, 144 F.3d 229, 237-38 (2d Cir.1998) held that "A material
breach of a covenant will allow the licensor to rescind the license and hold the
licensee liable for infringement for uses of the work thereafter," but "rescission
[does] not occur automatically.... See also, *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d
749, 753 (11th Cir.1997) ("One party's breach [of an oral, nonexclusive license to
play a song] does not automatically cause rescission of a bilateral contract"); *Rano
v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir.1993) ("Although licensing
agreements are not terminable at will, under federal and state law a material breach
of a licensing agreement gives rise to a right of rescission which allows the
nonbreaching party to terminate the agreement. After the agreement is terminated,
any further distribution would constitute copyright infringement.") (internal
citations omitted); 3 Nimmer on Copyrights § 10.15 [A] (6th ed. 1978)
("Rescission may also be based on fraud in the inducement to execute the
assignment," but "[f]ailing such rescission, ... the grant continues in place, thus

24

precluding infringement liability until such time as the copyright owner exercises

his entitlement to rescind.").

 Accordingly, there is no copyright infringement by Bluehost, and the

copyright infringement claim against Bluehost should be dismissed.

## CONCLUSION

 For the reasons set forth above, it is respectfully requested that Bluehost's

partial summary judgment motion be granted dismissing Therion's claims against

Bluehost.

**Dated:  New York, New York**
   **November 23, 2009**

           _____

           **Carl E. Person   (CP  7637)**
           *Attorney for Defendant, Bluehost, Inc.*
           **325 W. 45th Street - Suite 201**
           **New York, New York 10036-3803**
           **(212) 307-4444**

## CERTIFICATE OF SERVICE

It is hereby certified that on November 23, 2009 a true and correct copy of the foregoing

### BLUEHOST, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

(the "Document") was served on the respective attorneys for the Plaintiff and Co-Defendants by causing the same to be delivered by first class mail, postage pre-paid to:

Gregg A. Paradise, Esq.                                    [Pltf]
Lerner, David, Littenberg, Krumholz & Mentlik, LLP
600 South Avenue West
Westfield NJ  07090

Law Offices of Elise Schwarz            [Media-by-Design, Inc., Dennis Backer]
225 Broadway – 41st Floor
New York NY  10007

**Dated:   November 23, 2009**

_____
            **Carl E. Person**