Gregg A. Paradise
LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel:  908.654.5000
Fax:  908.654.7866

*Attorneys for Plaintiff Therion Inc.*

**DOCUMENT FILE ELECTRONICALLY**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THERION INC., | : |
| | : Civil Action No. 08-5256-TCP-ETB |
| Plaintiff, | : |
| v. | : District Judge Thomas C. Platt |
| | : Magistrate Judge E. Thomas Boyle |
| MEDIA BY DESIGN, INC. d/b/a HEALTH WITH MAGNETS, DENNIS BACKER, and BLUEHOST INC., | : |
| | : |
| Defendants. | : |
| | x |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**BLUEHOST, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1106809_1.DOC

**TABLE OF CONTENTS**

I.   INTRODUCTORY STATEMENT ................................................................................1

II.  COUNTER-STATEMENT OF FACTS ........................................................................3

    A.   BlueHost's Facts Are Irrelevant Or Wholly Unsupported
        By The Factual Record .........................................................................................4

III. ARGUMENT ................................................................................................................11

    A.   BlueHost's Argument That The Terms Of Service And
        Their Enforcement By BlueHost Are Authorized By
        Federal Law Is Irrelevant ....................................................................................11

    B.   BlueHost's Contention That BlueHost Is To Have No
        Liability To The Web Site Owner Misinterprets The Terms
        Of Service Agreement .........................................................................................11

    C.   BlueHost's Contention That BlueHost Has Not Acted
        Improperly As To Therion In Any Way Is Wrong ..............................................12

    D.   BlueHost's Contention That Therion Has No Claim Against
        BlueHost For Breach Of BlueHost's Terms of Service Is
        Incorrect ..............................................................................................................13

    E.   BlueHost's Contention That Therion Has No Claim
        Against BlueHost For Misappropriation Is Incorrect ..........................................13

    F.   BlueHost's Contention That Therion Has No Claim
        Against BlueHost For Conversion Is Incorrect ...................................................15

    G.   Therion's Unfair Competition Claim Was Intended Against
        Backer .................................................................................................................15

    H.   BlueHost's Contention That Therion Has No Claim
        Against BlueHost For Copyright Infringement Is Incorrect ...............................16

IV.  CONCLUSION .............................................................................................................16

I.      **INTRODUCTORY STATEMENT**

Defendant BlueHost Inc.'s ("BlueHost") motion for partial summary judgment is wholly unsupported legally and factually. As discussed in more detail below, BlueHost's motion rests on facts that are either strongly disputed and/or not relevant to Therion Inc.'s ("Therion") asserted claims. Moreover, BlueHost has not properly analyzed the legal claims asserted by Therion in this case.

In the "Facts" section of BlueHost's Memorandum of Law in Support of BlueHost Inc.'s Motion for Partial Summary Judgment ("BlueHost's Memorandum"), BlueHost lists numerous "Facts" in support of its motion. However, many of these statements are irrelevant to the claims at issue, are not supported (or in many cases contradicted) by the factual record, and do not support BlueHost's legal arguments. In particular, a majority of BlueHost's arguments regarding Therion's claims are based on a statement in Mr. Ashworth's declaration that "BlueHost's policy is clear that the owner of the credit card that paid for the hosting account is the owner of the account unless a change in ownership document is received." (Ashworth Decl. ¶ 36, Nov. 23, 2009.) However, BlueHost has not identified where this policy is incorporated into BlueHost's Terms of Service ("TOS") Agreement (because it is not), or in any other document produced in this case. Further, at least six different times, BlueHost alleges that Therion failed to provide BlueHost with notice of a change in ownership (BlueHost Mem. 7, 9, 19, 20, 21, 22, Nov. 23, 2009), however, Therion did actually update the information associated with the hosting account promptly (Declaration of Gregg A. Paradise, dated Nov. 23, 2009, submitted in support of Therion's Motion for Partial Summary Judgment ("Paradise Decl.") Exh. C at BH02-03.)

Similar to BlueHost's "Facts," BlueHost's legal arguments are irrelevant, do not address the actual legal claims at issue, and are not supported by undisputed facts. First, BlueHost

argues that Federal Law authorizes BlueHost's enforcement of the TOS Agreement. (BlueHost Mem. at 16.) This argument is entirely irrelevant to Therion's claims.

Second, BlueHost argues that it has no liability whatsoever under the TOS Agreement. (*Id.* at 18.) As Therion argued in its own memorandum in support of partial summary judgment, the TOS Agreement does not limit or eliminate BlueHost's liability under the circumstances of the present case. If anything, the TOS merely limits the damages for which BlueHost is responsible (although Therion disputes this as well). Accordingly, the facts do not support BlueHost's arguments that BlueHost has no liability under the TOS Agreement.

Third, BlueHost argues that it has not acted improperly as to Therion in anyway. (*Id.* at 19.) In support of BlueHost's argument, BlueHost states that the TOS Agreement "have [sic] a way in which record ownership is to be transferred," however, as stated above, there is no such provision in the TOS Agreement. Nor has BlueHost produced any such form or written procedure. Furthermore, as argued in Therion's own memorandum in support of partial summary judgment, BlueHost has breached numerous provisions of the TOS Agreement. Accordingly, the facts do not support BlueHost's arguments that BlueHost has not acted improperly.

Fourth, BlueHost argues that Therion has no claim against BlueHost for breach of BlueHost's TOS Agreement because BlueHost was not notified of a change in ownership. (*Id.* at 20.) Therion did, in fact, update all of the listed contact information, including the contact name, address, phone number, e-mail, and credit card information. (Paradise Decl. Exh. C at BH02-03, Exh. F ¶ 1.02.) Again, as argued in Therion's own memorandum in support of partial summary judgment, BlueHost has breached numerous provisions of the TOS Agreement and acted tortiously against Therion. In support of this argument, BlueHost states that the TOS Agreement requires the owner to provide BlueHost with notice of a change of ownership,

however, as stated above, there is no such provision in the TOS Agreement. Accordingly, the facts do not support BlueHost's arguments that BlueHost has not acted improperly.

Fifth, BlueHost argues that Therion has no claim against BlueHost for misappropriation or conversion because BlueHost was not notified of a change in ownership. (BlueHost Mem. 21, 22.) Again, BlueHost essentially argues that the TOS Agreement requires the owner of record to notify BlueHost of a change of ownership. However, as stated above, there is no such provision in the TOS Agreement. Accordingly, the facts do not support BlueHost's arguments with regard to Therion's claims for misappropriation or conversion.

Sixth, BlueHost argues that Therion has no claim against BlueHost for copyright infringement because BlueHost is similar to a printer, which facilitates publication by another. (*Id.* at 23-24.) This argument is irrelevant and somewhat confusing because the law is clear that printers can be liable for copyright infringement. BlueHost also cites to law that holds that after an agreement granting a copyright license is terminated, any additional distribution constitutes copyright infringement (*id.* at 24); however, BlueHost expressly terminated the TOS Agreement as to Therion when BlueHost provided Backer with access to the account. Accordingly, the facts do not support BlueHost's arguments with regard to Therion's claim for copyright infringement.

For the reasons summarized above and described in more detail below, Therion respectfully requests that the Court deny BlueHost's motion for partial summary judgment.

## II.     COUNTERSTATEMENT OF FACTS

BlueHost's "Facts" section lists a number of items that are irrelevant, wholly unsupported by the factual record, and/or legal conclusions cloaked as facts. Many of BlueHost's facts were repetitive, disorganized, and irrelevant. Accordingly, in order to best respond to each of BlueHosts "Facts," Therion will identify and address each fact and any related statements in the

general order provided in BlueHost's Memorandum and attachments. As will be explained below, the following "Facts" do not support BlueHost's motion for partial summary judgment.

### A. BlueHost's Facts Are Irrelevant Or Wholly Unsupported By The Factual Record

- When Dennis Backer and/or Media-by-Design Inc. sold their healthwithmagnets.com Web site (the 'Web site') to Therion, Inc., some of the contact information was changed but the name of the company with record ownership of the hosted Web site was never changed from the original record ownership name of Health With Magnets.

(BlueHost Mem. 5.)

While this statement is correct, there was no need for Therion to change the record name of ownership because the entire Health With Magnets company was sold to Therion. Therion did, in fact, update all of the listed contact information, including the contact name, address, phone number, e-mail, and credit card information. (Paradise Decl. Exh. C at BH02-03, Exh. F ¶ 1.02.) Furthermore, Therion was granted an assumed name certificate for "HEALTH WITH MAGNETS" by the New York State Department of State Division of Corporations. (Spiegler Decl. Exh. B. at T0007-T0008, Jan. 29, 2010.) Thus, the fact that "BlueHost never heard of the company Media By Design or Therion, Inc. until the Summons and Complaint" is equally irrelevant. (*See* BlueHost Mem. 10.) It is also untrue as Bruce Spiegler, the President of Therion, called BlueHost concerning this dispute, immediately upon being locked out of Therion's Web site hosting account with BlueHost. Accordingly, this fact does not support BlueHost's motion for partial summary judgment.

- Simply changing the contact information to name a new person and giving such person access to the site and files does not make such person the owner of the account (or Web site). There are many times that Web designers and programmers must have full access to the sites but this does not constitute ownership.

(*See id.* at 5-6.)

1106809_1.DOC                4

This statement is misleading. Therion changed the contact information and account password, and removed Backer's name from the account. (Paradise Decl. Exh. C at BH02-03.) There was no other mode of changing ownership required by the TOS Agreement. In addition, while there may be situations in which Web designers and programmers must have full access to a Web site, that did not happen in this case and BlueHost did not make any effort to determine whether Backer or Therion were Web designers or programmers. Nor did BlueHost request such information from Backer or Therion.

- Although part of the contact information about the Website was changed and the password was changed, at no time was Bluehost made aware of the change of ownership of the account from Backer to Therion. . . . Therion, as alleged purchaser of the Website, became subject to the Terms of Service and failed (with Backer) to follow the Terms of Service to create record ownership of the Website for Therion and presumably deny access to the Website to Backer at some point along the way. . . . A change of ownership document signed by both parties is required for an actual change of hosting account ownership to take place.

(BlueHost Mem. 6, 7.)

This is simply incorrect. Therion changed the contact information and removed Backer's name from the account. (Paradise Decl. Exh. C at BH02-03.) Furthermore, there is **NO** section of the TOS Agreement that requires Therion to provide BlueHost with written confirmation of a change in ownership. While BlueHost repeatedly references a "change of ownership document" (BlueHost Mem. 7, 14, 20, 21, 22) and that the "Terms of Service have a way in which record ownership is to be transferred" (*id.* at 19), no such document or requirement exists. Accordingly, this fact does not support BlueHost's motion for partial summary judgment.

- BlueHost's policy is clear that the owner of the credit card that paid for the hosting account is the owner of the account unless a change in ownership document is received.

(Ashworth Decl. ¶ 36.)

This statement is wholly without support.  There simply is **NO** such statement in the TOS Agreement or any other document.  Even if such a policy existed, it would not support BlueHost's claims that it "did nothing wrong."  Accordingly, this fact does not support BlueHost's motion for partial summary judgment.

- The effort by Therion to access the Website was viewed by the BlueHost software and system as an unauthorized attack on the Website.

(BlueHost Mem. 6.)

Therion is unable to discern from BlueHost's Memorandum or its attachments any factual support for this incredible statement.  BlueHost simply provides **NO** evidence to support this statement.  Furthermore, BlueHost's own records confirm that the account password had been changed by Therion on September 17, 2008, over two months before Backer notified BlueHost of any access issues.  (Paradise Decl. Exh. D at BH09.)  During this time, there was frequent contact between BlueHost and Therion.  (Spiegler Decl. ¶ 4.).  Never, until its motion for summary judgment, did BlueHost make this allegation.  Accordingly, this fact does not support BlueHost's motion for partial summary judgment.

- Due to lack of any signed change of ownership documents (stating that the ownership of the website had changed to Therion, Inc.) Therion's efforts to exercise ownership rights to the website were rejected by Bluehost.

(BlueHost Mem. 6.)

This statement is misleading and false.  BlueHost did not reject Therion's efforts to exercise ownership rights to its Web site or the hosting account for over two months.  While BlueHost gave Backer access to and control over the account at a later date, there is **NO** statement in the TOS Agreement requiring Therion to provide signed change of ownership documents.  Furthermore, Therion offered documentation to BlueHost immediately upon being shut out of its hosting account, but BlueHost refused to consider it.  (Spiegler Decl. ¶ 5.)  Instead,

BlueHost informed Therion that Therion would have to obtain a court order. (Paradise Decl. Exh. D at BH08). Thus, BlueHost's statement that "Bluehost never saw a copy of the Sale Agreement between Backer and Therion, Inc. . . . until service of the Summons and Complaint" is misleading because BlueHost refused to consider this precise documentation when offered by Therion. (BlueHost Mem. 10.) Accordingly, this fact does not support BlueHost's motion for partial summary judgment.

- Denying Therion access to the Web site was "precisely what Bluehost's agreement (or Terms of Service) requires Bluehost to do. See text under paragraph entitled 'Spamming' of Exhibit A to the Ashworth declaration. Also, such action was required under 18 USC § 2701 of the Electronic Communications Privacy Act ('ECPA'), not just Bluehost's Terms of Service.

(*Id.* at 6-7.)

This statement makes no sense. First, although it is unclear, it appears that BlueHost contends that Section 9.02 of the TOS Agreement permitted BlueHost to deny Therion access to the Web site. This section of the TOS Agreement is clearly irrelevant, as it only deals with e-mail spamming.[1] The factual record is devoid of any accusation of or reference to "spamming" activities by Therion.

---

[1] Section 9.02 states:
Spamming. Spamming, whether or not it overloads the Services or disrupts service to BlueHost.Com's Subscribers, is prohibited. The term "Spamming" includes, but is not limited to, the sending of unsolicited bulk and/or commercial messages over the internet, maintaining an open SMTP policy, or sending to any mailing list that is not double opt in. BlueHost.Com requires that all email messages contain an automated opt out. We do not allow purchased lists. BlueHost.Com's Subscribers are required to follow all rules in the Can Spam Act . . . as well as our company spam rules. BlueHost.Com reserves the right to determine, in its sole and absolute discretion, whether e-mail recipients were part of an opt-in email list. Irrespective of whether an email campaign constitutes Spamming as defined herein, BlueHost.Com allows a MAXIMUM of 500 emails per hour to be sent from any individual hosting account.
(*See* Ashworth Decl. Exh. A § 9.02.)

Second, 18 U.S.C. § 2701 of the Electronic Communications Privacy Act is completely irrelevant as it is a federal criminal statute relating to accessing electronic information. BlueHost offers no explanation as to how this statute applies or was violated by anyone. In any event, the statute does not require a hosting company to deny access to anyone. Accordingly, this fact does not support BlueHost's motion for partial summary judgment.

- [T]he Terms of Service state that Bluehost shall not be liable under the circumstances of this case.

(BlueHost Mem. 7-8.)

This statement is also incorrect. Section 12.01 of the TOS Agreement merely states that "BLUEHOST.COM SHALL NOT BE LIABLE FOR NONPERFORMANCE OR DELAY IN PERFORMANCE CAUSED BY ANY REASON, WHETHER WITHIN OR OUTSIDE OF ITS CONTROL." (Ashworth Decl. Exh. A § 12.02.) This statement limits BlueHost's liability for BlueHost's failure to perform Web site hosting services under the contract and BlueHost's liability for loss of its customer's business in the event of outages. For example, when BlueHost's servers are inactive, the aforementioned language protects BlueHost from liability resulting from lost sales. This limitation does not also extend to all breaches of BlueHost's duties to Therion, such as for conversion of Therion's property. (*See* Therion Mem. 10-11 (discussing the implications of Section 12.1 of the TOS Agreement).) Accordingly, this fact does not support BlueHost's motion for partial summary judgment.

- Backer's hosting account with Bluehost includes domain names and websites obviously not a part of the Sale Agreement (including healthdiscountmall.com).

(BlueHost Mem. 10.)

This statement is incorrect. Healthdiscountmall.com was not an active Web site. There were no other domains on the account. Further, according to the Agreement for Transfer of Ownership ("Purchase and Sale") of Business ("Purchase Agreement"), this inactive Web site

1106809_1.DOC                                8

was also sold to Therion, as any accounts and Web sites owned by Media By Design were transferred pursuant to the Purchase Agreement. (Paradise Decl. Exh. B ¶ 1.01(c).)

- In the factual allegations, BlueHost's Memorandum questions that "[i]f Bruce Spiegler had access to all of the files on the Bluehost hosting account from August 30, 2008 through November 20, 2009, why did he not use Bluehost's simple 1 click backup utility which existed and worked for the duration of that time to make a backup of the files which were/are of such alleged great importance to him. Spiegler was negligent to fail to backup documents[/files] that he is now claiming have a value of many hundreds of thousands of dollars."

(BlueHost Mem. 13.) BlueHost's Memorandum also questions:

- [W]hy has [Therion's owner] still not got his website up and running since he has access to the domain healthwithmagnets.com and has also had the documents/files which BlueHost provided for him as part of discovery on July 19, 2009.

(*Id.*)

These questions do not present pertinent facts and are irrelevant. BlueHost's own Web site states that "[with] BlueHost you can depend on: . . . Secure and reliable backups." (Spiegler Decl. Exh. A.) Furthermore, whether Therion is currently using the Web site is irrelevant to the issue of BlueHost's liability. If anything, these facts might only relate to the amount of damages to which Therion is entitled. Accordingly, these facts do not support BlueHost's motion for partial summary judgment.

- Therion should comply with the requirement, in the Terms of Service, that any suit against Bluehost be brought in Utah.

(BlueHost Mem. 13-14.)

Again, there is absolutely **NO** support for this statement — and none exists. There is no forum selection clause in the TOS Agreement, yet Mr. Ashworth's sworn declaration also states that this "requirement" is included in the TOS Agreement. (Ashworth Decl. ¶ 44.) Therion is not required to bring any legal action in Utah. Furthermore, pursuant to Fed. R. Civ. P. 12(h)(1)(a) and 12(g)(2), BlueHost waived any objections to the forum pursuant to Fed. R.

Civ. P. 12(b)(6) when it did not raise the objection in its responsive pleadings or previous motion to dismiss. Accordingly, this fact cannot support BlueHost's motion for partial summary judgment.

- Therion never owned the hosted account on BlueHost's records for the account. Ownership was never properly transferred for the hosted account.

(BlueHost Mem. 15.)

This statement is incorrect and wholly unsupported by the record. Defendant Backer admitted that on August 24, 2008, Therion purchased from Backer the entire Media By Design business, including all rights to the Internet domain name www.healthwithmagnets.com, as well as the Web site content and the Web site hosting account with defendant BlueHost. (*See* Paradise Decl. Exh. A at 55, Exh. B.) Furthermore, this fact is contradicted by BlueHost's own claims that Therion is bound by the TOS Agreement. How could Therion be bound by the TOS Agreement unless it acquired ownership of the hosting account? Accordingly, this fact does not support BlueHost's motion for partial summary judgment.

Thus, there is an egregious lack of support for the foregoing facts. As a result, BlueHost's legal conclusions, disguised as factual statements, that "Bluehost followed proper procedure," or that "Bluehost did precisely what it was supposed to do," that "BlueHost was simply the service provider and had nothing to do with who was authorized to access the hosted account," and that BlueHost "simply followed Bluehost's procedures for protecting the Website owner as indicated on [BlueHost's] records," are also wholly unsupported by the factual record. (BlueHost Mem. 6, 7, 12, 15.) Accordingly, as these facts presented by BlueHost are irrelevant or unsupported by the record, Therion respectfully requests that the Court deny BlueHost's motion for partial summary judgment.

**III.   ARGUMENT**

BlueHost has not presented its arguments to the actual legal claims at issue. Rather, BlueHost resorts primarily to name-calling, labeling Therion's various legal claims as "ridiculous" (BlueHost Mem. 21), "senseless" (*id.* at 22), "ridiculous" (*id.*), and, again, "ridiculous" (*id.* at 23). Additionally, BlueHost's arguments are not supported by undisputed facts. In order to facilitate a response, Therion will simply address each argument in the order presented by BlueHost.

**A.   BlueHost's Argument That The Terms Of Service And Their Enforcement By BlueHost Are Authorized By Federal Law Is Irrelevant**

This section of BlueHost's Memorandum is completely irrelevant and illogical. It appears that BlueHost contends that 18 U.S.C. § 2701, a federal criminal statute, provides justification for BlueHost's enforcement of the TOS Agreement. To the extent that BlueHost's statements may be considered "facts" in support of BlueHost's motion, Therion respectfully submits that these facts are entirely irrelevant.

**B.   BlueHost's Contention That BlueHost Is To Have No Liability To The Web Site Owner Misinterprets The TOS Agreement**

BlueHost argues, incorrectly, that it has no liability to Therion based on the TOS Agreement.[2] As stated above, Therion's claims are subject to the limitations in the TOS Agreement only for actions relating to BlueHost's failure to provide Web site hosting services

---

[2] BlueHost also argues that paragraph 58 of Therion's complaint absolves BlueHost of any liability. Paragraph 58 of Therion's complaint states that "[b]y virtue of the Sale Agreement, Backer and Media By Design had a duty to disclose to Bluehost their sale to Therion of the Media By Design business, including the Bluehost Web site hosting account." BlueHost contends that paragraph 58 of Therion's complaint is an admission by Therion that Therion has no claim against BlueHost. BlueHost is reading this paragraph out of context. Even if Backer's actions misled BlueHost, this does not absolve BlueHost of any liability. In addition, although BlueHost lists this as a fact that supports summary judgment in BlueHost's favor, BlueHost's memorandum does not appear to rely upon it in support of any of its legal arguments.

under the contract. The TOS Agreement states that BlueHost shall not be liable under contract, negligence, tort, strict liability, or any other legal or equitable theory for "nonperformance or delay in performance." (Ashworth Decl. Exh. A. § 12.02.) This language merely limits BlueHost's liability for loss of its customer's sales due to temporary loss of service. For example, if BlueHost's servers are ever inactive due to technical difficulties, the aforementioned language protects BlueHost from liability resulting from lost sales. This limitation does not also extend to conversion or other breaches of BlueHost's duties to Therion. Accordingly, paragraph 12.02 does not prohibit Therion from bringing an action for claims outside the scope of the limitation clause, and BlueHost's interpretation of this section is erroneous.

      C.    **BlueHost's Contention That BlueHost Has Not Acted Improperly As To Therion In Any Way Is Wrong**

BlueHost argues that it has done nothing wrong. This is simply incorrect. BlueHost has breached numerous provisions of the TOS Agreement and acted tortiously against Therion by: (1) providing Backer with the account password, (2) providing Backer with Therion's confidential information, and (3) transferring ownership of the Web hosting account including all of Therion's proprietary Web site information. BlueHost does not deny these facts. In fact, BlueHost specifically acknowledges them: "BlueHost gave access to the rightful owner of the account (Backer) according to BlueHost's policies and Terms of service . . . and excluded Therion from ownership rights." (BlueHost Mem. 14, 20.)

In support of its contention, BlueHost again argues that the "Terms of Service have a way in which record ownership is to be transferred for BlueHost administration purposes." (*Id.* at 19.) Again, there is **NO** such "way" identified in the TOS Agreement or anywhere else. According to BlueHost's Memorandum, it is for this "such reason, BlueHost treats Backer as the

owner and excluded Therion from ownership rights." (*Id.* at 20.) Again, as this fact is wholly unsupported by the record, BlueHost's argument fails.

Thus, BlueHost's contention that it has not acted improperly as to Therion in any way is incorrect and wholly unsupported by the record.

> **D.  BlueHost's Contention That Therion Has No Claim Against BlueHost For Breach Of BlueHost's Terms Of Service Is Incorrect**

BlueHost argues that it has not breached the TOS Agreement because "[u]nder BlueHost's Terms of Service, the owner as listed with Bluehost has to provide provide [sic] to Bluehost notice of the change of ownership." (*Id.*) Again, this is simply incorrect. There is no such notice provision to be found anywhere in the TOS Agreement. As this fact is wholly unsupported by the record, BlueHost's argument fails.

As argued by Therion in its Memorandum in Support of Partial Summary Judgment, BlueHost has breached the TOS Agreement in numerous ways. First, by providing Backer with the account password, BlueHost breached paragraph 5.03 of the TOS Agreement. (*See* Therion Mem. 5.) Second, BlueHost has breached paragraph 6.03 of the TOS Agreement by disclosing Therion's confidential information to Backer. (*Id.* at 6.) Third, by transferring ownership of the Web site hosting account to Backer, BlueHost breached its obligation under the TOS Agreement to provide account services to Therion and to not misappropriate Therion's property. (*Id.* at 7.)

Thus, BlueHost's contention that it has not breached the TOS Agreement is incorrect and wholly unsupported by the record. Accordingly, the Court should deny BlueHost's motion for partial summary judgment with regard to Therion's breach of contract claim.

> **E.  BlueHost's Contention That Therion Has No Claim Against BlueHost For Misappropriation Is Incorrect**

BlueHost argues that it has not misappropriated the Web site hosting account because "[t]he files remained intact on the host servers at all times and pursuant to Bluehost's Terms of

Service, to which the new owner was subject, Bluehost required the owner of record (Backer/Media) to submit appropriate papers to notify Bluehost of a change in ownership, and this was not done." (BlueHost Mem. 21.) Again, this is simply incorrect. There is no such notice provision in the TOS Agreement. Again, as this fact is wholly unsupported by the record, BlueHost's argument fails.

BlueHost's argument that the elements of misappropriation are lacking is also incorrect. Therion contends that BlueHost and defendant Backer misappropriated Therion's property by seizing control of the BlueHost Web site hosting account, and thereby denying access to Therion. Therion also contends that these acts were committed willfully, knowingly, maliciously, and in conscious disregard of Therion's rights. As a result of the defendants' actions, Therion has suffered irreparable injury to its property and business.

Furthermore, BlueHost's argument that "there was no trade secret involved; there was no use of a trade secret in breach of an agreement, confidence or duty, or as the result of discovery by improper means" misstates the law on misappropriation. *Schanfield v. Sojitz*, cited by BlueHost, discusses misappropriation of trade secrets, not common-law misappropriation. *See Schanfield v. Sojitz Corp.*, No. 07-CV-9716, 2009 WL 3241573 (S.D.N.Y. Oct. 5, 2009). Thus, BlueHost's arguments in this regard fail.

For these reasons, BlueHost's contention that it has not misappropriated the Web site hosting account is incorrect and wholly unsupported by the record. Accordingly, the Court should deny BlueHost's motion for partial summary judgment with regard to Therion's misappropriation claim.

### F.  BlueHost's Contention That Therion Has No Claim Against BlueHost For Conversion Is Incorrect

BlueHost's argument that its actions do not constitute conversion is incorrect. Although BlueHost's argument is again unclear, it appears that BlueHost contends that as one of the two contracting parties, BlueHost had the right to provide defendant Backer with access to the account "because of the failures to provide Bluehost with the required notice of change of ownership." (BlueHost Mem. 22.) Again, this is simply incorrect; there is no requirement that BlueHost be provided with "notice of change of ownership" apart from updating the account information and passwords, as Therion did. Again, as this fact is wholly unsupported by the record, BlueHost's argument fails.

Furthermore, BlueHost fails to cite any law in support of its position. This is because BlueHost's transfer of the Therion Web site hosting account and Web site data to Backer constitutes conversion under both Utah and New York law as argued by Therion in its Memorandum in Support of Partial Summary Judgment.[3] (Therion Mem. 8.)

Thus, BlueHost's contention that its actions do not constitute conversion is incorrect and wholly unsupported by the record. Accordingly, the Court should deny BlueHost's motion for partial summary judgment with regard to Therion's conversion claim.

### G.  Therion's Unfair Competition Claim Was Intended Against Backer

Therion intended its unfair competition claim against defendant Backer. To the extent that the unfair competition claim has been understood as being asserted against defendant BlueHost, Therion withdraws this claim as to BlueHost.

---

[3] Given the intangible nature of the converted property, there is a question as to whether Utah or New York law applies. However, as there is no substantive difference between the laws of the two states as discussed in Therion's Motion for Partial Summary Judgment, this issue need not be reached.

### H. BlueHost's Contention That Therion Has No Claim Against BlueHost For Copyright Infringement Is Incorrect

BlueHost's argument that its actions do not constitute copyright infringement is incorrect. Again, BlueHost's argument is unclear. BlueHost argues that it "is more like a printer that facilitates publication by someone else." (BlueHost Mem. 24). However, even printers can be liable if they engage in copyright infringement. *See, e.g., Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110 (2d Cir. 1986) (holding printer liable for infringement of copyright when instructed by a licensee to alter the copyright information). In addition, BlueHost cites to and quotes case law in its brief that states that "[a]fter the agreement is terminated, any further distribution would constitute copyright infringement." (BlueHost Mem. 24.) BlueHost expressly terminated the TOS Agreement as to Therion when it provided defendant Backer with access to the account. After this time, BlueHost continued to, in BlueHost's own words, "print" for defendant Backer. Thus, BlueHost's contention that its actions do not constitute copyright infringement is incorrect and wholly unsupported by the record. Accordingly, the Court should deny BlueHost's motion for partial summary judgment with regard to Therion's copyright infringement claim.

### IV. CONCLUSION

Based on the foregoing, Therion respectfully requests that the Court deny BlueHost's motion for partial summary judgment in its entirety.

          Respectfully submitted,

          LERNER, DAVID, LITTENBERG,
           KRUMHOLZ & MENTLIK, LLP
          *Attorneys for Plaintiff Therion Inc.*

Dated: February 3, 2010      By:   s/ Gregg A. Paradise
                                     Gregg A. Paradise
                                       Tel:    908.654.5000
                                       E-mail: gparadise@ldlkm.com
                                                      litigation@ldlkm.com