UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
THERION, INC.,

                              Plaintiff,                    REPORT AND
                                                           RECOMMENDATION

           -against-                                       CV 08-5256 (TCP)(ETB)

MEDIA BY DESIGN, INC. d/b/a HEALTH WITH
MAGNETS, DENNIS BACKER, and BLUEHOST
INC.,

                              Defendants.
-----------------------------------------------------------------------X

TO THE HONORABLE THOMAS C. PLATT, United States District Judge:

        By Orders dated June 7, 2010 and October 29, 2010, Judge Platt, the District Judge

assigned to this action, referred the following motions to the undersigned for a Report and

Recommendation: (1) defendant BlueHost Inc.'s ("BlueHost") motion to amend its Answer and

Counterclaim; (2) plaintiff, Therion, Inc.'s ("Therion"), motion for partial summary judgment;

and (3) BlueHost's cross-motion for partial summary judgment.[1]  For the following reasons, I

recommend that BlueHost's motion to amend its Answer and Counterclaim be denied.  I further

recommend that both motions for summary judgment be granted in part and denied in part.

_____

        [1]  Included in Judge Platt's June 7, 2010 referral order was a specific request that the
undersigned determine whether BlueHost "should have been allowed to file new opposition to
Plaintiff's re-filed Summary-Judgment Motion."  (Order of Platt, J. dated June 7, 2010.)
However, at a hearing held before the undersigned on June 14, 2010, counsel for BlueHost, John
Dozier, stated on the record that BlueHost was withdrawing its "request for filing additional
briefing on the Plaintiff's Motion for Partial Summary Judgment."  (Tr. of Hrg. before Boyle,
M.J., dated June 14, 2010, 2.)  Accordingly, this provision of the referral order is now moot.

-1-

<u>FACTS</u>

The plaintiff, Therion, Inc., a New York corporation, is the largest manufacturer of professional magnetic therapy products in the United States, specializing in biomagnetics research and the development of magnetic therapy products for the effective maintenance of pain and the improvement of sleep. (Compl. ¶ 9.) Therion's line of magnetic therapy products is sold through dealers, distributors and online at www.therionresearch.com. (Compl. ¶ 9.)

Prior to August 2008, defendant Dennis Backer ("Backer") operated as an online dealer of Therion's magnetic therapy products through his website www.healthwithmagnets.com. (Compl. ¶ 10.) Backer operated his website through his California-based company, defendant Media By Design.[2] (Compl. ¶ 10.) Media By Design maintained an internet website hosting account with defendant BlueHost, Inc., which is a webhost service provider whose principal place of business is located in Utah and who hosts over one million domains. (BlueHost's R. 56.1 Statement ("BlueHost's 56.1") ¶¶ 1-2; Therion's Response to BlueHost's R. 56.1 Statement ("Therion's Resp.") ¶¶ 1-2.)

On August 24, 2008, Therion purchased the entire Media By Design business from Backer, including all rights to the domain name www.healthwithmagnets.com. and the BlueHost hosting account. (Therion's R. 56.1 Statement ("Therion 56.1") ¶ 1; BlueHost's R. 56.1 Counter-Statement ("BlueHost's Counter-Stmt.") ¶ 1; Backer Dep. 55-56, 108-09; Paradise Decl., Ex. B.) On September 19, 2008, Bruce Spiegler ("Spiegler"), the President of Therion, changed the password and contact information associated with the BlueHost hosting account. (Spiegler Decl. ¶ 3.)

---

[2] Neither Backer nor Media By Design are parties to the within motions.

To protect against hacking, BlueHost requires that the website owner provide a credit card and a government-issued identification card or driver's license when opening a hosting account. (Ashworth Aff. ¶¶ 3-4.) When a customer becomes aware that his hosting account has been hacked, he contacts BlueHost's customer service department, which validates the account ownership by comparing the customer's credit card and driver's license information with that used to open the account. (Ashworth Aff. ¶ 4.) Once the information is validated, BlueHost transfers ownership back to the "rightful owner." (Ashworth Aff. ¶ 4.)

On November 20, 2008, Backer contacted BlueHost via email and demanded access to the hosting account, stating that Spiegler was "trying to steal this account." (Therion's 56.1 ¶ 3; BlueHost's Counter-Stmt. ¶ 3; Backer Dep. 120-21.) Backer provided BlueHost with his credit card and driver's license information. (BlueHost's 56.1 ¶ 12; Therion's Resp. ¶ 12.) In response, BlueHost provided Backer with an account password, transferred the account back to Backer's possession, reinstated the account in Backer's name and reset the password. (Therion's 56.1 ¶ 4; BlueHost's Counter-Stmt. ¶ 4; BlueHost's 56.1 ¶ 12; Therion's Resp. ¶12; Backer Dep. 114-15.) Thereafter, Backer changed all of the contact information associated with the BlueHost account to reflect his name on the account, as well as his email address, street address, telephone number and credit card information. (Backer Dep. 123-24.) Backer then completely disabled the Health With Magnets website such that there could be no further sales of magnetic therapy products by Therion. (Backer Dep. 125-26.)

Although BlueHost referenced the matter as an "[o]wnership dispute between Dennis [Backer] and Bruce [Spiegler]" in its computer system, it did not notify Therion of either the purported dispute or Backer's actions. (Therion's 56.1 ¶¶ 10-11; BlueHost's Counter-Stmt. ¶¶

-3-

10-11.)  Instead, on November 21, 2008, Spiegler, on behalf of Therion, contacted BlueHost and demanded that it transfer the account back to Therion.  (BlueHost's 56.1 ¶ 13; Therion's Resp. ¶ 13; Spiegler Decl. ¶ 5.)  BlueHost refused to do so and advised Spiegler that he would need a court order establishing that Therion was the correct owner of the hosting account.  (BlueHost's 56.1 ¶ 13; Therion's Resp. ¶ 13; Spiegler Decl. ¶ 5.)  Therion commenced the within action on December 31, 2008, alleging claims for breach of contract, misappropriation, unfair competition, conversion and copyright infringement.

DISCUSSION

I.     BlueHost's Motion to Amend its Answer and Counterclaim

BlueHost seeks to amend its Answer and Counterclaim to replace the Terms of Service Agreement ("TOS Agreement") appended to its Answer and relied upon in the Counterclaim with what it now asserts is the "appropriate" TOS Agreement in effect during the pertinent time period at issue herein.  (BlueHost Not. of Mot. 1.)  BlueHost also seeks to add "other Affirmative Defenses" to its Answer not previously raised.  (Id. 2.)

A.     Legal Standard

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings and provides that "a party may amend the party's pleading only by leave of court or by written consent of the other party; and leave shall be given as justice so requires."  Fed. R. Civ. P. 15(a).  The decision to allow such leave is firmly within the discretion of the district court.  See Liberty Mut. Ins. Co. v. First Brighton Transp. Mgmt., No. 07 CV 715, 2008 U.S. Dist. LEXIS 31791, at *11-12 (E.D.N.Y. Apr. 16, 2008) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401

U.S. 321, 330 (1971)). Leave to amend is generally granted unless there appears to be bad faith

or unnecessary delay on the part of the movant, undue prejudice to the opposing party, or

permitting the proposed amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182

(1962).

In determining whether to grant leave to amend, the court applies the same standard as

that for a motion to dismiss under Rule 12(b)(6). See Dougherty v. Town of N. Hempstead Bd.

of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). In order to defeat a Rule 12(b)(6) motion, an

individual must plead only enough facts to "state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). As such, "[t]he court must construe the facts alleged by the party

proposing the amendment to be true and view them in the most favorable light." Hartman v.

County of Nassau, No. 04 CV 1784, 2008 U.S. Dist. LEXIS 34729, at *55 (E.D.N.Y. Apr. 28,

2008) (citing Narvarte v. Chase Manhattan Bank, N.A., No. 96 CV 8133, 1998 U.S. Dist. LEXIS

15530, at *1 (S.D.N.Y. Oct. 1, 1998)).

B.    BlueHost's Motion to Amend is Defective

As a threshold matter, BlueHost's motion to amend its Answer is procedurally

defective insofar as BlueHost has failed to attach a copy of its proposed amended answer to its

motion papers.[3] "In order to meet the requirements of particularity in a motion to amend, a

complete copy of the proposed amended [answer] must accompany the motion so that both the

Court and opposing parties can understand the exact changes sought." Sanders v. Grenadier

---

[3] Indeed, even after Therion pointed out the absence of a proposed amended answer in its
opposition papers (Therion Mem. of Law in Opp'n to Mot. to Am. 2), BlueHost still failed to
remedy the defect.

Realty, Inc., No. 08 Civ. 3920, 2009 U.S. Dist. LEXIS 38356, at *11 (S.D.N.Y. May 6, 2009)

(quoting Zito v. Leasecomm Corp., No. 02 Civ. 8074, 2004 WL 2211650, at *25 (S.D.N.Y. Sept.

30, 2004)) (additional quotation and internal quotation marks omitted); LaBarbera v. Ferran

Enters., Inc., No. 06-2678, 2009 U.S. Dist. LEXIS 9615, at *7 (E.D.N.Y. Feb. 10, 2009) (same).

Moreover, "[t]his defect is material here because it appears that [BlueHost] is seeking to

amend [its answer] to assert additional unspecified [defenses]." Go v. Rockefeller Univ., Nos.

04 Civ. 4008, 06 Civ. 1825, 2008 U.S. Dist. LEXIS 17269, at *12 (S.D.N.Y. Mar. 6, 2008). For

example, BlueHost asserts in its motion papers that "[t]here are significant affirmative defenses

that arise from the terms of the contracts at issue in this case." (BlueHost Mem. of Law 2.) Yet,

BlueHost fails to specify exactly what affirmative defenses it seeks to include in an amended

answer. Without a copy of BlueHost's proposed amended answer, "it is impossible[] to

'understand the exact changes sought'" by BlueHost. Colida v. Nokia Am. Corp., No. 05 Civ.

9920, 2006 U.S. Dist. LEXIS 64578, at *7 (S.D.N.Y. Sept. 11, 2006) (quoting Smith v. Planas,

151 F.R.D. 547, 550 (S.D.N.Y. 1993)).

Accordingly, I find that BlueHost's motion to amend its answer is defective and should

be denied.

C.     BlueHost's Motion to Amend Should be Denied on the Merits

Even if BlueHost's motion to amend were not defective, it should still be denied

based on BlueHost's undue delay in making the motion and the prejudice to Therion that will

result if BlueHost were permitted to amend its answer at this point in the litigation. "The court

. . . has discretion to deny leave to amend 'where the motion is made after an inordinate delay, no

satisfactory explanation is offered for the delay, and the amendment would prejudice' other

parties." <u>Grace v. Rosenstock</u>, 228 F.3d 40, 53-54 (2d Cir. 2000) (quoting <u>Cresswell v. Sullivan</u> <u>& Cromwell</u>, 922 F.2d 60, 72 (2d Cir. 1990)). The party seeking to amend bears the burden of providing a "satisfactory explanation for the delay." <u>Cresswell</u>, 922 F.2d at 72.

Here, discovery closed over one year ago, on November 2, 2009. Throughout discovery, the parties proceeded on the belief that the TOS Agreement attached to BlueHost's Answer was the TOS Agreement in effect during the time period at issue herein. For example, discovery requests and responses were based on the TOS Agreement attached to BlueHost's Answer, BlueHost's Counterclaim is based on the TOS Agreement attached to its Answer and BlueHost further relied on the agreement in support of its motion to dismiss. Moreover, Therion specifically requested that BlueHost produce during discovery all of its "Terms of Service" (1) "in effect on March 11, 2008;" (2) "in effect at any time after August 24, 2008;" and (3) "in effect at any time that apply to either the [Media By Design] Defendants or Therion." (Second Paradise Decl. Ex. I, Reqs. 5-7.) Despite these requests, the only TOS Agreement ever produced by BlueHost is the one originally attached to its Answer.

On February 24, 2009, Therion moved for partial summary judgment. BlueHost opposed Therion's motion and also cross-moved for partial summary judgment itself. As a result of a dispute between the parties regarding the briefing of the motions (BlueHost had sought permission to amend its motion papers), by Order dated May 7, 2010, Judge Platt denied both motions without prejudice to renewal. The motions were refiled on June 1, 2010. That same day, BlueHost filed the within motion to amend its Answer and Counterclaim, asserting for the first time that the TOS Agreement upon which the parties had been relying since the inception of this litigation was not the correct document. The sole justification offered by BlueHost for

failing to submit the correct TOS Agreement is the following statement by Dan Ashworth

("Ashworth"), co-owner and Vice President of BlueHost:

> Since Mr. Backer became a customer of BlueHost, Inc. there have been many different versions of the [TOS] Agreement in effect. The original [TOS] Agreement submitted in this case was the existing [TOS] Agreement on the website which, when asked, I assumed was the contract that was needed in this case and it did not even register with me that there were other iterations of the [TOS] Agreement that pre-dated the version submitted to this Court. In fact, once new counsel became involved it became apparent that there were many different versions going back in time that could apply to the contract dispute in this matter.[4]

(Ashworth Aff. ¶ 11.)

Permitting BlueHost to amend its Answer and Counterclaim at this point to introduce a new TOS Agreement not produced during discovery and to add new affirmative defenses would be "especially prejudicial [to Therion] given the fact that discovery ha[s] already been completed and [Therion] ha[s] already filed a motion for summary judgment." Ansam Assoc., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985). BlueHost attempts to excuse its delay in proffering the new TOS Agreement on the grounds that prior counsel "did not even conduct discovery in this case." (BlueHost Reply Mem. of Law 2.) Such an excuse is not enough to justify permitting an amendment at this late date in the litigation. See, e.g., Ansam, 760 F.2d at 446 (finding plaintiff's justification for making a belated motion to amend that prior counsel "failed to conduct substantive discovery" to be "insufficient").

For the foregoing reasons, I recommend that BlueHost's motion to amend its Answer and

---

[4] The Court notes that BlueHost does not even offer a specific document that it asserts should be considered the "appropriate" TOS Agreement. Instead, it offers fifteen versions of the TOS Agreement (the original plus fourteen new ones) and requests that the Court decide which agreement should apply. (Ashworth Aff., Ex. A-O.)

Counterclaim be denied and that the original TOS Agreement annexed to BlueHost's Answer as Exhibit A be considered the controlling document upon which the motions for partial summary judgment should be decided.

II.     The Parties' Cross-Motions for Summary Judgment

Both Therion and BlueHost seek partial summary judgment, albeit with respect to different claims.  Specifically, Therion requests partial summary judgment with respect to the following claims: (1) breach of contract; (2) conversion; and (3) BlueHost's counterclaim for breach of contract.  BlueHost also seeks summary judgment with respect to its own counterclaim, as well as with respect to plaintiff's claims for breach of contract, conversion, misappropriation and copyright infringement.

A.     Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden is on the moving party to establish the lack of any factual issues.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  Rather, the requirement is that there be no "genuine issue of material fact."  Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most

favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).  When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts."  Id. at 586.  Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial."  Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted).  "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim."  Meltzer, 440 F. Supp. 2d at 187.

B.    Breach of Contract

As an initial matter, the TOS Agreement attached to BlueHost's Answer, which I recommend be considered the controlling contract herein, as stated supra in connection with BlueHost's motion to amend, specifically provides that the terms of the agreement "shall be governed by the laws of the State of Utah without reference to conflict of law principles."  (TOS Agreement ¶ 11.07.)  Accordingly, Utah law applies to Therion's breach of contract claim.

Pursuant to Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other

-10-

party, and (4) damages." <u>Bair v. Axiom Design, L.L.C.</u>, 20 P.3d 388, 392 (Utah 2001).  The

elements for breach of contract are the same under New York law.  <u>See, e.g.</u>  <u>Campo v. 1st</u>

<u>Nationwide Bank</u>, 857 F. Supp. 264, 270 (E.D.N.Y. 1994) (reciting the elements of a breach of

contract claim as "(1) the existence of a contract; (2) due performance by plaintiff; (3) breach of

the contract by defendant; and (4) damage as a result of the breach" ).

     1.     <u>Existence of a Contract</u>

     As a threshold matter, whether or not a contract exists between the parties

is a question of law to be decided by the court.  <u>See Beekman Investment Partners, L.P. v. Alene</u>

<u>Candles, Inc.</u>, No. 05 Civ. 8746, 2006 U.S. Dist. LEXIS 5341, at *8 (S.D.N.Y. Feb. 14, 2006)

(citing <u>Ronan Assocs. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs</u>, 24 F.3d 447, 449

(2d Cir. 1994)) (additional citation omitted).  While Therion asserts that there is no dispute as to

whether the TOS Agreement constitutes a valid contract between BlueHost and Therion,

BlueHost appears to change its position on this issue repeatedly throughout its motion papers.

     Specifically, BlueHost argues in its opposition to Therion's motion for summary

judgment that "no contractual relationship arose between Therion and BlueHost (or at the very

least there are issues of fact with respect to the existence of a contractual relationship)."

(BlueHost Mem. of Law in Opp'n 5.)  BlueHost further asserts that its counterclaim for breach of

contract was pled as an "alternate theory" of recovery, pursuant to Federal Rule of Civil

Procedure 8(d)(3), (<u>id.</u> 4), "in the event that this Court deems a contract existed between Therion

and BlueHost," (<u>id.</u> 4 n.1),  asserting that it does not believe the TOS Agreement constitutes a

contract between the parties.  However, in its Reply Memorandum of Law in support of its own

motion for summary judgment, BlueHost states that "[e]ach of the claims asserted by Plaintiff

should be dismissed based upon the clear terms of the contract between the parties" and cites to the TOS Agreement attached to its Answer. (BlueHost Reply Mem. of Law 4.) Accordingly, BlueHost does not appear to know which position it would like to take with respect to the existence of a contract.

Moreover, BlueHost's Answer repeatedly references the TOS Agreement as being "the Hosting Contract between BlueHost and Therion" and states that "Therion is legally bound to the Hosting Contract," (BlueHost Ans. ¶¶ 68, 72), and that Therion "has breached this contract with BlueHost." (BlueHost Ans. ¶ 73.) BlueHost cannot have it both ways. As the Second Circuit has explicitly held, "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout [the] litigation." Gibbs v. CIGNA Corp., 440 F.3d 571, 578 (2d Cir. 2006) (citing Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985)) (additional citation omitted). "Having agreed on a set of facts, the parties . . . and this Court, must be bound by them." Gibbs, 440 F.3d at 578 (quoting PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 123 (2d Cir. 1984)) (additional quotation omitted).

Based on the foregoing, I find that BlueHost is bound to the facts pleaded in its Answer such that it has admitted that the TOS Agreement at issue herein constitutes a valid and enforceable contract between Therion and BlueHost.

2.     Performance by Therion

The second element necessary to sustain a cause of action for breach of contract is proof that plaintiff gave due performance under the contract. See Bair, 20 P.3d at 392; see also Campo v. 1st Nationwide Bank, 857 F. Supp. at 270. The dispute herein centers around whether or not Therion performed its obligations under the TOS Agreement.

Specifically, Paragraph 1.02 of the TOS Agreement provides that the subscriber (in this case, Therion):

> represents and warrants all information provided by [Therion] to BlueHost.com has been and is complete, accurate, and current, and that [Therion] shall continue to provide complete, accurate and current information to BlueHost.com in connection with all registration or renewal processes and further agrees to update all such information as necessary to maintain complete, accurate and current information.

(TOS Agreement ¶ 1.02.)  The TOS Agreement further provides that the subscriber "must continually update and keep accurate and current [its] contact information stored and saved on BlueHost.com . . . ."  (TOS Agreement ¶ 11.04.)

Therion asserts that it has satisfied this obligation in that once Backer transferred ownership of the Healthwithmagnets.com website and its hosting account, Therion "updated all account information, credit card information, and passwords with BlueHost to reflect Therion's ownership as required under the TOS Agreement."  (Therion Mem. of Law 4.)  These changes are reflected in BlueHost's electronic notes concerning the Health With Magnets website, which were submitted as evidence in support of the within motions by Therion.  (Paradise Decl., Ex. C.) Spiegler, Therion's President, also confirms that on September 19, 2008, he changed the password and contact information associated with the Bluehost hosting account for www.healthwithmagnets.com.  (Spiegler Decl. ¶ 3.)

BlueHost argues, however, that Therion failed to comply with the obligations of the TOS Agreement in that it "failed to change the company name to reflect a change in ownership." (BlueHost Mem. of Law in Opp'n 11.)  According to BlueHost's co-owner and Vice President, Ashworth, the typical process is for the website owner (the seller) to notify BlueHost that it is

transferring its account to a third party, at which point BlueHost validates the ownership information via the credit card and driver's license information that was used to initially open the account. (Ashworth Aff. ¶ 5.) BlueHost then advises the seller to have the website purchaser open a separate account. (Ashworth Aff. ¶ 5.) Once this new account is opened, the seller can then request that BlueHost designate the new account as the owner of the website. (Ashworth Aff. ¶ 5.)

BlueHost asserts that rather than following this process, Therion accessed Backer's account information page and simply changed the contact information but left the company name the same, i.e, "Health With Magnets." (Ashworth Aff. ¶ 6.) According to BlueHost, it therefore "had no knowledge of this effort, albeit wholly ineffective, to try and transfer the ownership of the account by simply changing information on an account record page." (Ashworth Aff. ¶ 6.) Therion, however, asserts that it filed for and was granted an assumed name certificate for "Health With Magnets" by the New York State Department of State in conjunction with its purchase of the Media By Design business from Backer. (Spiegler Decl., Ex. B.) According to Therion, since it was properly doing business under the name "Health With Magnets," there was no need for it to change this information with BlueHost. (Therion Reply Mem. of Law 6.) Therion further argues that nothing in the TOS Agreement identifies what actions by Therion would constitute providing BlueHost with "proper notice." (Id.)

Based on the foregoing, I find that there is a genuine issue of material fact with respect to whether Therion performed its obligations under the TOS Agreement to update its ownership information with BlueHost. Such an issue of fact precludes summary judgment. Accordingly, I recommend that both Therion's and BlueHost's motions for summary judgment be denied with

-14-

respect to Therion's breach of contract claim.

      C.    <u>Conversion</u>

In order to sustain a claim of conversion under New York law, a plaintiff "must show that (1) plaintiff had a legal ownership interest in the property, and (2) defendant exercised unauthorized interference with the plaintiff's ownership or possession of that property." <u>Italverde Trading Co. v. Four Bills of Lading</u>, 485 F. Supp. 2d 187, 194 (E.D.N.Y. 2007) (quoting <u>Reznor v. J. Artist Mgmt., Inc.</u>, 365 F. Supp. 2d 565, 579-80 (S.D.N.Y. 2005)) (additional citations omitted). "The test for conversion is whether a party exercises dominion or actually interferes with the property to the exclusion or in defiance of the plaintiff's rights." <u>Asdourian v. Konstantin</u>, 93 F. Supp. 2d 296, 298 (E.D.N.Y. 2000) (quoting <u>Meese v. Miller</u>, 436 N.Y.S.2d 496, 500 (4th Dep't 1981)). The test is substantially the same under Utah law. <u>See State v. McBride</u>, 940 P.2d 539, 543 (Utah Ct. App. 1997) ("[C]onversion requires 'only an intent to exercise dominion or control over the goods inconsistent with the owner's right.'").

While Therion asserts that it has satisfied the requisite elements to establish a claim for conversion, there is no need for the Court to reach the merits as the claim is duplicative of Therion's breach of contract claim. As BlueHost correctly points out, "[a] conversion claim . . . will not lie if it merely duplicates a breach of contract claim."[5] <u>Gould Paper Corp. v. Madisen Corp.</u>, 614 F. Supp. 2d 485, 493 (S.D.N.Y. 2009) (citing cases); <u>see also</u> <u>Leisure Direct, Inc. v. Glendale Capital, LLC</u>, No. 05-CV-4473, 2010 U.S. Dist. LEXIS 99178, at *10 (E.D.N.Y. July 27, 2010), <u>adopted by</u>, 2010 U.S. Dist. LEXIS 99175 (E.D.N.Y. Sept. 20, 2010) ("[A]n otherwise

---

[5] The Court notes that Therion's reply brief fails to address this issue other than to state that the cases cited by BlueHost are distinguishable on their facts.

sufficient complaint for conversion will be dismissed if it is duplicative of a cause of action for breach of contract.").  In determining whether the claim is duplicative, "[c]ourts look to the material facts upon which each cause of action is based and to the alleged injuries for which damages are sought to determine if the claim is redundant."  Leisure Direct, 2010 U.S. Dist. LEXIS 99178, at *11 (citing Bio Hi-Tech Co., Ltd. v. Comax, Inc., 2009 WL 3497490, at *7 (E.D.N.Y. Oct. 28, 2009)).  Where the conversion claim is based on the same set of underlying facts as the contract claim, it will be dismissed as duplicative.  See, e.g., Leisure Direct, 2010 U.S. Dist. LEXIS 99178, at *12 (recommending dismissal of conversion claim where it "plainly duplicate[d] [plaintiff's] contract claim"); East 2 West Product Group, LLC v. Henry Brown, LLC, No. 09 Civ. 1870, 2010 U.S. Dist. LEXIS 73642, at *5 (S.D.N.Y. July 15, 2010) (dismissing conversion claim where it was "predicated on the same factual allegations as [plaintiff's] breach of contract claim"); Gould Paper, 614 F. Supp. 2d at 493 (dismissing conversion claim where it was "premised entirely on the breach of contract claim").

Here, while the two claims are worded somewhat differently in the Complaint, both the conversion claim and the breach of contract claim are predicated on BlueHost's actions of returning control of the website hosting account to Backer and denying access to Therion. Accordingly, because the conversion claim is premised on the same set of underlying facts as the breach of contract claim, it is duplicative and therefore fails as a matter of law.

For the foregoing reasons, I recommend that Therion's motion for summary judgment with respect to its conversion claim be denied.  I further recommend that BlueHost be granted summary judgment with respect to Therion's claim for conversion and that the claim be

dismissed.[6]

D.     Misappropriation

The only basis for BlueHost's motion for summary judgment with respect to Theron's misappropriation claim is that it is entitled to immunity under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. §230.  However, such an affirmative defense, see Gibson v. Craigslist, Inc., No. 08 Civ. 7735, 2009 U.S. Dist. LEXIS 53246, at *2-3 n.1 (S.D.N.Y. June 15, 2009) (referring to CDA Section 230 immunity as an affirmative defense); Novak v. Overture Servs., 309 F. Supp. 2d 446, 452 (noting that the "invocation of Section 230(c) immunity constitutes an affirmative defense"), is not included anywhere in BlueHost's Answer and, has therefore been waived.  See Doubleday & Co. v. Curtis, 763 F.2d 495, 503 (2d Cir. 1985) ("[A] party's failure to plead an affirmative defense bars its invocation at later stages of the litigation."); see also Design Options v. Bellepointe, 940 F. Supp. 86, 92 (S.D.N.Y. 1996) ("An unpleaded affirmative defense raised for the first time in a motion for summary judgment has been held to have been waived under Rule 8(c).").  Moreover, as recommended supra, BlueHost should not be permitted to amend its Answer to include such an affirmative defense at this late stage of the litigation as it would prejudice Therion and there has been undue delay on BlueHost's part in seeking leave to amend.  Accordingly, BlueHost's motion for summary judgment with respect to Therion's claim for misappropriation should be denied.

---

[6]  The Court notes that BlueHost only raised the duplication issue in its opposition to Therion's motion and did not independently move for summary judgment on these same grounds. However, BlueHost did move for summary judgment with respect to Therion's conversion claim, albeit on different grounds, and since the claim fails as a matter of law, BlueHost should be afforded judgment on the claim.

E.    Copyright Infringement

As an initial matter, Therion has not moved for summary judgment with respect to its claim for copyright infringement. Moreover, as with the misappropriation claim, BlueHost's only basis for seeking summary judgment on the copyright infringement claim is that Section 512(c) of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), provides an affirmative defense to BlueHost. See Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 142 (S.D.N.Y. 2009) (precluding defendants from asserting "their affirmative defense of protection under the DMCA's safe harbor provision"); Capitol Records, Inc. v. Mp3Tunes, LLC, 661 F. Supp. 2d 342, 348 (S.D.N.Y. 2009) (noting that the DMCA safe harbor provision is an affirmative defense). Specifically, BlueHost asserts that the DMCA provides a "safe haven" to businesses such as itself in that it mandates a "take down" notice process be followed when a copyright owner thinks its copyright has been infringed. (BlueHost Mem. of Law 6.)

As with the CDA Section 230 defense of immunity, BlueHost has not included the DMCA safe harbor defense in its Answer and has therefore waived such a defense. See Doubleday, 763 F.2d at 503. Moreover, for the same reasons discussed supra, BlueHost should not be permitted to amend its Answer at this point to include such a defense. Accordingly, BlueHost's motion for summary judgment with respect to Therion's copyright infringement claim should be denied.

F.    BlueHost's Counterclaim

In its Answer, BlueHost asserts a counterclaim against Therion for breach of contract, alleging that Therion has breached the TOS Agreement by commencing the within action against BlueHost. (BlueHost Ans. ¶¶ 72-75.) According to BlueHost, the limitation of

liability provision contained in the TOS Agreement precludes Therion from bringing any kind of legal action against BlueHost. Therion asserts that the limitation of liability provision is not as broad as BlueHost would like the Court to believe. Both Therion and BlueHost seek summary judgment with respect to BlueHosts's counterclaim.

Paragraph 12.02 of the TOS Agreement states, in pertinent part, as follows:

> BlueHost.com shall not be liable for nonperformance or delay in performance caused by any reason, whether within or outside of its control. In no event shall BlueHost.com be liable under contract, negligence, tort, strict liability or any other legal or equitable theory for any direct, indirect, incidental, exemplary or consequential damages (including, without limitation, loss of use, lost profits, loss of data or information of any kind or loss of business goodwill or opportunity) whether or not BlueHost.com has been advised of the possibility of such loss or damages. BlueHost.com shall not be liable for the cost of procurement of substitute goods, services or technology. BlueHost.com's entire liability and subscriber's exclusive remedy with respect to any use of the services is the cancellation of subscriber's account as set forth herein. In no event shall BlueHost.com's liability to you, the subscriber, exceed the greater of one dollar ($1.00) or any amounts actually paid in cash by you, the subscriber, to BlueHost.com for the prior one month period.

(TOS Agreement ¶ 12.02.)

As an initial matter, I find nothing in the limitation of liability provision that actually prohibits Therion from commencing suit against BlueHost. There is no language that even indirectly suggests that Therion is precluded from merely bringing legal action against BlueHost, nor are there any statements that would infer that doing so is a breach of the TOS Agreement. For this reason, BlueHost's counterclaim for breach of contract fails as a matter of law and should be dismissed.

However, there is a question as to whether BlueHost can be found liable to Therion on

any of the claims asserted herein. Therion asserts that the limitation of liability provision only applies to liability for nonperformance or delay in performance by BlueHost, which is not at issue in the within action. Conversely, BlueHost contends that the provision absolves it of all liability for any cause of action asserted.

When interpreting contracts, Utah law provides that courts must "first look to the writing alone to determine its meaning and the intent of the contracting parties." Giusti v. Sterling Wentworth Corp., 201 P.3d 966, 975 (Utah 2009) (citation omitted). New York courts follow the same rule of construction. See Henrich v. Phazar Antenna Corp., 827 N.Y.S.2d 58, 60 (2d Dep't 2006) ("[T]he best evidence of what the parties to a written agreement intend is what they say in their writing.") (quoting Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (2002)). "If the language within the four corners of the contract is unambiguous, . . . a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." State v. Ison, 135 P.3d 864, 873 (Utah 2006) (citation omitted); see also Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004) ("In the absence of any ambiguity, we look solely to the language used by the parties' to discern the contract's meaning.").

Whether a contract is ambiguous is a question of law for the court to decide. See Yeargin, Inc. v. Auditing Div. of the Utah State Tax Comm'n, 20 P.3d 287, 297 (Utah 2001) (stating that whether a contract is ambiguous "is a matter of law"); see also Schmidt v. Magnetic Head Corp., 468 N.Y.S.2d 649, 653 (2d Dep't 1983) ("The threshold question of whether a writing is ambiguous is the exclusive province of the court."). "An ambiguity exists where the language 'is reasonably capable of being understood in more than one sense.'" Dixon v. Pro Image, Inc., 987 P.2d 48, 52 (Utah 1999) (quoting R&R Energies v. Mother Earth Indus., Inc.,

936 P.2d 1068, 1074 (Utah 1997)).  Where the court finds that a contract is ambiguous, it should

be construed against the drafter.  See Utah Pizza Serv., Inc. v. Heigel, 784 F. Supp. 835, 838 n.1

(D. Utah 1992) ("Ambiguities in contract provisions are to be construed against the drafter.");

see also Cappiello v. ICD Publs., Inc., No. CV 08-02417, 2010 U.S. Dist. LEXIS 85499, at *52

(E.D.N.Y Aug. 19, 2010) (citing Scudder v. Jack Hall Plumbing and Heating, 756 N.Y.S.2d 330

(3d Dep't 2003)).

Here, the limitation of liability provision begins with the statement that "BlueHost.com

shall not be liable for nonperformance or delay in performance caused by any reason, whether

within or outside of its control."  (TOS Agreement ¶ 12.02.)  There is no question that this

language absolves BlueHost of any liability related to nonperformance or a delay in performance.

However, the limitation of liability provision then goes on to state as follows: "In no event shall

BlueHost.com be liable under contract, negligence, tort, strict liability or any other legal or

equitable theory for any direct, indirect, incidental, exemplary or consequential damages

(including, without limitation, loss of use, lost profits, loss of data or information of any kind or

loss of business goodwill or opportunity) . . . ."  (TOS Agreement ¶ 12.02.)  While this language

clearly purports to limit the damages for which BlueHost may be found liable, it is unclear

whether it applies to all causes of actions that could possibly be asserted against BlueHost or

whether the second sentence, noted above, applies solely to the limitation of BlueHost's liability

for nonperformance or a delay in performance as stated in the first sentence of the provision.

This language is clearly ambiguous.[7]

_____

[7]  The Court notes that notwithstanding the ambiguity of the limitation of liability
provision, contract language that purports to contract away a party's liability for any and all
causes of action, including negligence, as BlueHost asserts, raises public policy and

Since I find the language of the provision to be ambiguous, as stated supra, it must be construed against the drafter, which in the within action is BlueHost. See Yeargin, 20 P.3d at 297. Construing such language against BlueHost, I find that the limitation of liability provision only applies to BlueHost's liability for nonperformance or a delay in performance. Accordingly, the TOS Agreement does not preclude Therion from asserting the causes of action alleged in its Complaint.

Based on the foregoing, I recommend that Therion's motion for summary judgment be granted with respect to BlueHost's counterclaim for breach of contract and that BlueHost's motion for summary judgment be denied with respect to that claim.

RECOMMENDATION

For the foregoing reasons, I recommend that BlueHost's motion to amend its Answer and Counterclaim be denied and that the Terms of Service Agreement attached as Exhibit A to BlueHost's Answer be deemed controlling in this action. I further recommend that both Therion's and BlueHost's motions for partial summary judgment be granted in part and denied in

_____

unconscionability concerns for the Court. While the majority of states, including Utah, hold that "people may contract away their rights to recover in tort for damages caused by the ordinary negligence of others," Pearce v. Utah Athletic Foundation, 179 P.3d 760, 765 (Utah 2008), such limitations on liability "are not unlimited in power" and can be invalidated where they "offend public policy." Id. Moreover, while the law "permits parties to enter into unreasonable contracts or contracts leading to a hardship on one party," Ryan v. Dan's Food Stores, Inc., 972 P.2d 395, 402 (Utah 1998), courts may refuse to enforce unconscionable contracts. See id. Unconscionability "has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contractual terms which are unreasonably favorable to the other party." Id. (quotation omitted). However, the Court does not have the facts necessary to determine whether the limitation of liability provision found in the TOS Agreement is unconscionable or offensive to public policy and therefore raises this issue as an area of concern.

part.  Specifically, I recommend that Therion's claim for conversion and BlueHost's counterclaim for breach of contract be dismissed.  With respect to the remaining claims for breach of contract, misappropriation and copyright infringement, I find that genuine issues of material fact exist and recommend that those claims proceed to trial.


<u>OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further appellate review.  <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 299-300 (2d Cir. 1992).


**SO ORDERED:**

Dated: Central Islip, New York
            November 10, 2010

                                        /s/ E. Thomas Boyle_____
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge